## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, GARY J. MEYERS, in his official capacity as a fiduciary, 1750 New York Avenue, N.W. Washington, DC 20006-5387 ) ) ) ) ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION NO. |
| v. ) | |
| BUILT RIGHT CONSTRUCTION, INC. d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) 387 Passaic Avenue Fairfield, NJ 08093 ) ) ) ) ) ) ) ) ) | |
| VINCENT PAINO a/k/a Vince Paino, individually and d/b/a Built Right Construction, Inc., d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) 42 Mayflower Street Clifton, NJ 07013 ) ) ) ) ) ) ) ) ) ) | |
| RIZEK KHALIFEH, individually and d/b/a Built Right Construction, Inc., d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) 24 Willet Street Bloomfield, NJ 07002 ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

194204
PTINTF-29592
PL

## JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action under 29

U.S.C. §§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331.  The claims asserted are

all made under federal statutes or federal common law, but the supplemental jurisdiction of

the Court under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under

state law.

2.     A copy of this Complaint is being served on the Secretary of Labor and the

Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C.

§1132(h) .

## VENUE

3.     Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C.

§185(a) and/or 28 U.S.C. §1391(b).

## PARTIES

4.     Plaintiff International Painters and Allied Trades Industry Pension Fund

("Fund" or "Pension Fund") is a trust fund established under 29 U.S.C. §186(c)(5).  Its

Trustees are the "named fiduciary," "plan administrator" and "plan sponsor" and each is an

individual "fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the

International Painters and Allied Trades Industry Pension Plan ("Pension Plan") and

International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan").  The Pension

Plan and Annuity Plan are each a "multiemployer plan," "employee benefit plan" and

"employee benefit pension plan" within the meaning of 29 U.S.C. §1002(37), (2) and (3).  The

Fund, Pension Plan and Annuity Plan maintain their principal place of business and are

administered from an office in this district at the address for the Fund in the caption of this Complaint.

5.      Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of contributions due the Funds and related matters. He has a business address as listed in the caption and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as organizations.

6.      The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

(a)     the Pension Plan,

(b)     the Annuity Plan,

(c)     the Political Action Together Fund, which includes the Political Action Together – Legislative and Educational Committee and  Political Action Together – Political Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund established pursuant to 2 U.S.C. §431 et seq. by the International Union of Painters and Allied Trades for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office,

(d)     the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"),  which is a trust fund established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(e)     the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

7.     The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.     The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.     The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund are hereinafter jointly or severally referenced as the "Funds."

10.     Defendant Built Right Construction, Inc., d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction (Drywall Contractor) ( "Built Right" or jointly or severally referenced with Paino and Khalifeh, as "Company") is a dissolved New Jersey corporation (effective on or before January 16,  2007 due to an absence of filings for two years after a last filing on March 30, 2005 ) with a business office at the address listed in the caption that continues in existence only for the purpose of winding up its affairs and paying its debts to creditors and may be sued in its corporate name for that purpose.

11.     Defendant, Vincent Paino a/k/a Vince Paino ("Paino") is an individual with an address as listed in the caption. With Khalifeh and perhaps others, he has carried on the business of Built Right after its dissolution and is responsible as a general partner for the debts of the continued business. He is also an owner, officer, agent or managing agent of Built Right with liability for any misuse or misdirection of its corporate assets.

12.    Defendant, Rizek Khalifeh ("Khalifeh") is an individual with an address as listed in the caption. With Paino and perhaps others, he has carried on the business of Built Right after its dissolution and is responsible as a general partner for the debts of the continued business. He is also an owner, officer, agent or managing agent of Built Right with liability for any misuse or misdirection of its corporate assets.

13.    Company (including Built Right and the partnership after its dissolution) was and are an employer(s) in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12). Company did business with the Fund that is sufficient to create personal jurisdiction in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

14.    At all times relevant to this action, Built Right was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature page of the Labor Contract is attached as **Exhibit 1**. The partnership created by Paino, Khalifeh and perhaps others after the dissolution of Built Right assumed the Labor Contracts by its conduct and actions, including, without limitation, submission of contribution remittance reports to the Fund as specified by the Labor Contract.

15.     The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds.  A true and correct copy of the Trust Agreement for the Fund is attached as **Exhibit 2**. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as **Exhibit 3**, and the Annuity Plan has parallel terms.

16.     Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)     To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)     To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art.VI, §§3, 5).

(c)     To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 2, pp.16-17 (Art.VI, § 6).

(d)     To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations

described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.12.

17.    Company has refused to submit remittance reports or payments for the periods July 2006 through January 2007 and May 2007 through January 2008 and continues in this breach of its obligations to date.

18.    Company has submitted an audit of its records on February 19, 2008. The results of that audit are not yet available.

19.    All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

### PLAINTIFFS

**v.**

### COMPANY

20.    The allegations of Paragraph 1 through 19 are incorporated by reference as if fully restated.

21.    Company has failed to pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan from July 1, 2006 to January 21, 2007, and May 1, 2007 through the present, in at least the sum of $45,480.97 based upon information presently available to the ERISA Funds in violation of 29 U.S.C. §1145.

22.    The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least the sum certain amount plus any additional amounts which may

become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

### PLAINTIFFS

**v.**

### COMPANY

23.    The allegations of Paragraphs 1 through 22 are incorporated by reference as if fully restated.

24.    On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

25.    The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late

charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. §1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

**COUNT III – INJUNCTION**

**PLAINTIFFS**

**v.**

**COMPANY**

26.     The allegations of Paragraphs 1 through 25 are incorporated by reference as if fully restated.

27.     A money judgment or other remedy available at law is inadequate because the Company has shown its disregard of its contractual and legal obligations by a consistent pattern of delinquencies or late payment of contributions.

28.     Unless ordered to do otherwise by this Court, Company will continue to refuse to submit remittance reports and pay the contributions presently due and owing or which become due and owing in the future, and the Funds and their participants will be irreparably damaged.

**WHEREFORE**, Plaintiffs, for themselves and on behalf of the Funds, ask that the Court:

(1)     Permanently restrain and enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them from continuing

to violate the terms of the current collective bargaining agreement(s) between the Company and

the Union (including its affiliated locals and district councils) and from violating such other

collective bargaining agreements as may from time to time be entered by the said parties

providing for the timely filing of remittance reports with complete, accurate and proper

information and timely payment of contributions to the Funds for so long as the Company is

contractually-required to do so.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

## COUNT IV - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

**v.**

### COMPANY

29.    The allegations of Paragraphs 1 through 22 are incorporated by reference as if

fully restated.

30.    The Company has not paid the Funds as required by the Labor Contract, and other

documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents

of the ERISA Funds.

31.    Plaintiffs have been damaged as a proximate result of the breach of Labor

Contract and/or its incorporated documents by Company.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of

the Funds, for the sum certain currently due plus any additional amounts which become due and

owing during the pendency of this litigation or as a result of an audit together with liquidated

damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT V - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

**v.**

### COMPANY

32.     The allegations of Paragraphs 1 through 31 are incorporated by reference as if fully restated.

33.     Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

_____
KENT CPREK
Bar No. 478231
DAWN M. COSTA
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0616
Attorneys for Plaintiffs

Date:_____

*Application for Pro Hac Admission of Dawn M. Costa shall be made at the appropriate time.

## CIVIL COVER SHEET

JS-44
(Rev. 2.01 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | Built Right Construction, Inc. d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor), 387 Passaic Avenue Fairfield, NJ 08093 |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kent Cprek, Esquire
Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,
510 Walnut Street, Phila., PA 19106
(215) 351-0615

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(SELECT ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (FOR DIVERSITY CASES ONLY!)
(SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ◯ G. Habeas Corpus/2255 | ◯ H. Employment Discrimination | ◯ I. FOIA/PRIVACY ACT | ◯ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K. Labor/ERISA (non-employment) | ◯ L. Other Civil Rights (non-employment) | ◯ M. Contract | ◯ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ◯ 2 Removed from State Court    ◯ 3 Remanded from Appellate Court    ◯ 4 Reinstated or Reopened    ◯ 5 Transferred from another district (specify)    ◯ 6 Multi district Litigation    ◯ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Select YES only if demanded in complaint    JURY DEMAND: ☐ YES    ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES    ☒ NO    If yes, please complete related case form.

DATE  March 17, 2008    SIGNATURE OF ATTORNEY OF RECORD _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

LOCAL UNION _DC0711_

DATES _5/1/06 - 5/31/11_

PENSION PAGES _____

RATES _pg 38 - 50_

WAGES _pg 16, 17_

APPRENTICESHIP RATES _____

SUBCONTRACTING _pg 29_

50% CLAUSE _1 & 2_

JURISDICTION CLAUSE _pg 2_

ROLLOVER _pg 35_

MODEL CLAUSE _pg 21, 25_

LMCI _pg 26_

PAT _pg 27 (.10)_

JATC _____

# Contract Profile (Inquiry)

## Master Collective Bargaining Agreement

Title: (DC711) MASTER MULTI-CRAFT AGREEMENT ID Number: DC000711001000000

Zone 04     GLAZING

## Complete Rate Information as of 2006-12-05

| Skill Level | Start Date | End Date | WAGES | IUPAT INDUSTRY PENSION | IUPAT INDUSTRY ANNUITY | LMCI | FTI | VACATION FUND | HEALTH WELFARE FUND | LOCAL INDUSTRY ADVANCEMENT | LOCAL APPRENTISHIP FUND | LOCA P.A.C |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A01 | 1998-05-01 | 1999-04-30 | | $2.50 | $0.82 | | | | | | | |
| A01 | 1999-05-01 | 2000-04-30 | | $0.75 | $1.02 | | | | | | | |
| A01 | 2000-05-01 | 2001-04-30 | | $0.99 | $1.08 | | | | | | | |
| A01 | 2001-05-01 | 2002-04-30 | | $0.99 | $1.08 | | | | | | | |
| A01 | 2002-05-01 | 2003-04-30 | | $0.50 | | | | | | | | |
| A01 | 2003-05-01 | 2004-04-30 | $9.00 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $3.90 | $0.15 | $0.30 | $0.07 |
| A01 | 2004-05-01 | 2005-04-30 | $9.15 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $3.97 | $0.15 | 2.00% | $0.07 |
| A01 | 2005-05-01 | 2006-04-30 | $9.30 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $4.03 | $0.15 | $0.62 | $0.07 |
| A01 | 2006-05-01 | 2006-10-31 | $9.63 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $4.17 | $0.15 | $0.65 | $0.10 |
| A01 | 2006-11-01 | 2007-04-30 | $9.86 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $4.27 | $0.15 | $0.66 | $0.10 |
| A01 | 2007-05-01 | 2008-04-30 | $10.42 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $4.51 | $0.15 | $0.69 | $0.10 |
| A01 | 2008-05-01 | 2009-04-30 | $11.01 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $4.77 | $0.15 | $0.73 | $0.10 |
| A01 | 2009-05-01 | 2010-04-30 | $11.59 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $5.02 | $0.15 | $0.77 | $0.10 |
| A01 | 2010-05-01 | 2999-12-31 | $12.18 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $5.28 | $0.15 | $0.81 | $0.10 |
| A02 | 1998-05-01 | 1999-04-30 | | $2.50 | $1.09 | | | | | | | |
| A02 | 1999-05-01 | 2000-04-30 | | $1.20 | $1.37 | | | | | | | |
| A02 | 2000-05-01 | 2001-04-30 | | $1.32 | $1.44 | | | | | | | |
| A02 | 2001-05-01 | 2002-04-30 | | $1.32 | $1.44 | | | | | | | |
| A02 | 2002-05-01 | 2003-04-30 | | $0.50 | $1.20 | | | | | | | |
| A02 | 2003-05-01 | 2004-04-30 | $12.00 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $3.90 | $0.15 | $0.30 | $0.07 |
| A02 | 2004-05-01 | 2005-04-30 | $12.20 | $0.00 | $0.00 | $0.05 | $0.05 | $1.00 | $3.97 | $0.15 | 2.00% | $0.07 |

RECEIVED

OCT 0 5 2006

G. S. T.

DC711

# COLLECTIVE BARGAINING AGREEMENTS

Between

## DISTRICT COUNCIL 711
State of New Jersey
International Union of Painters and
Allied Trades



And

Garden State Council, Inc.

And the

Drywall and Interior Systems Contractors
Association, Inc. of New Jersey

And the

New Jersey Glass and Metal Contractors Association

OCT 1 3 2006

## TABLE OF CONTENTS

| Article | Page |
|---|---|
| 1 Recognition | 1 |
| 2 Jurisdiction | 3 |
| 3 Union Security | 9 |
| 4 Administration Dues | 10 |
| 5 Exclusive Hiring Hall | 10 |
| 6 Wage & Schedule | 13 |
| 7 Hours & Overtime | 18 |
| 8 Contractual Relations & Obligations | 20 |
| 9 Working Conditions | 22 |
| 10 Fringe Benefit Fund | 23 |
| 11 Cooperation & Advancement Fund | 26 |
| 12 Political Action Fund | 27 |
| 13 Safety | 28 |
| 14 Union Representative & Shop Stewards | 28 |
| 15 Subcontracting | 29 |
| 16 Preservation of Work Clause | 29 |
| 17 Joint Trade Board | 30 |
| 18 Successor Clause | 33 |
| 19 General Savings Clause | 34 |
| 20 Duration Clause | 35 |
| Schedule A, new construction of all kinds | 38 |
| Schedule A 6.2 | 39 |
| Schedule A, Paperhanger | 40 |
| Schedule B, Repaint, Paperhanger | 41 |
| Schedule B | 42 |
| Schedule B 6.2 | 43 |
| Schedule C 6.1 | 44 |
| Schedule C 6.2 | 45 |
| Schedule D Industrial | 46 |
| Schedule D 6.2 Industrial | 47 |
| Schedule D 6.1 Industrial Repaint | 48 |
| Schedule D 6.2 Industrial Repaint | 49 |
| Schedule E Bridge | 50 |

# COLLECTIVE BARGAINING AGREEMENT

Between

## DISTRICT COUNCIL 711
State of New Jersey
International Union of Painters and
Allied Trades



And

Garden State Council, Inc.

# AGREEMENT

This agreement is between District Council 711, International Union of Painters and Allied Trades, hereinafter referred to as the "Union" and the Garden State Council Inc., hereinafter referred to as the "Council".

## ARTICLE 1
## MUTUAL RECOGNITION AND RELATIONSHIP

1.1   The Council hereby recognizes Painters District Council 711 as the sole and exclusive bargaining agent for all employees doing work covered in the work jurisdiction defined in Article 2.2

1.2   The Union recognizes the Council as the exclusive bargaining agent for all contractor employers.

1.3   (A)      The terms of employment, wages, hours of work and working conditions shall be maintained on a consistent basis for all employers and employees.

(B)      The parties agree that any employer who has entered into this agreement has the option to adopt or work under any other agreements, or terms or provisions thereof, which the Union has entered into with any other employer performing such work.

1.4   The terms of this agreement shall be binding upon the assigns and successors of the respective parties.

1.5   The employer agrees to register all jobs by mail/phone/fax to the Union main or local office in the area where the job is performed prior to starting any job. The original form shall be retained by the employer. Failure to comply is a violation of this agreement and is subject to an automatic $500.00 fine which must be paid to the Joint Trade Board before continuing work on said job.

1.6   All employers shall report to the Union the loss of any contract to a non-signatory contractor.

1.7   Any employer engaged in work outside the geographical jurisdiction of the Union shall:

1

(A)    Employ not less than 50% of the employed on such work from the residents of the area where the work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

(B)    Comply with lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

1.8    An employer shall not engage in work covered by the agreement through the use or device of another business or corporation which such an employer owns or controls through the use or device or a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

1.9    An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

1.10    Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

(A)    It shall be violation of this agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her

2

employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or persons on strike.

1.11   (A)   It is stipulated and agreed that the below named officer is the authorized representative of the Union:

Patrick J. Brennan, Business Manager

(B)   It is stipulated and agreed that the below named officer is the authorized representative of the Council:

Clement V. Sommers, Executive Director

(C)   In the event that either representative is no longer authorized by their respective organization, that party shall provide the other party with the name and address of the new authorized representative by registered letter, return receipt requested.

## ARTICLE 2
## JURISDITION

2.1   The territorial jurisdiction of the Union includes the State of New Jersey.

2.2   The Union shall have jurisdiction over:

All workers engaged in: painting, decorating and coating applications and wall covering; all levels of drywall and wall finishing; and all labor, material, tools or equipment for preparatory work or surface treatment, including mold remediation, work in relation to painting, hardwood finishers, grainers, varnishers, enamellers, gilders, drywall and wall finishing; glazing, architectural metal and glass work; flooring and decorative floor covering work; paint and coating manufacturing; sign, convention and display work; show decorators; scenic artists and designers; metal polishers; civil service, public and professional employees; book-binding; maintenance work; chemical, clerical and warehouse workers; any and all units, as well as all apprenticeable crafts, that have historically been part of the International Union of Painters and Allied Trades; and any and all work as may be obtained

3

and maintained through organizing and collective bargaining. Such work shall include, but not limited to:

(A)    **Painters:** Work will include, but not limited to: (1) preparation, application and removal of all types of coatings and coating systems in relation to all painting, decorating, protective coatings, coating and staining of concrete floors and toppings, waterproofing, masonry restoration, fireproofing, fire retarding, metal polishing, refinishing, sealing, lining, fiberglassing, E-Glass fiberglass, carbon fiber, encapsulating, insulating, metalizing, flame spray, the application of Exterior Insulating Finishing Systems; (2) each and all such applications, and similar or substitute applications, on all surfaces, interior and exterior, to include, but not be limited to: residences; buildings; structures; industrial, power, chemical and manufacturing plants; bridges; tanks; vats; pipes; stacks; light and high tension poles; parking, traffic and air strip lines; trucks; automobile and railroad cars; ships; aircraft; and all machinery and equipment; (3) any and all material used in preparation, application or removal of any paint, coatings or applications, including, but not limited to; the handling and use of thinners, dyers, sealers, binders, pigments, and primers, extenders, air and vapor barriers, emulsions, waxes, stains, mastics, plastics, enamels, acrylics, alkyds, epoxies, epoxy injections and t-lock welding, sheet rubber, foams, seamless and tile-like coatings, etc.; (4) all preparation for and removal of any and all materials for finishes, such as deep cleaning, patching, all levels of finishing, taping/finishing, skim coating, pointing, caulking, high pressure water, chemical and abrasive blasting, environmental blasting, wet/dry vacuum work, chemical stripping, scraping, air tooling, bleaching, steam cleaning, asbestos and lead abatement/removal; (5) the inspection of all coating systems during their applications will be performed by members of this International Union.

(B)    **Wall Covering** work will include, but not limited to: (1) all material applied to walls or ceilings with adhesive, staples, tacks, by stretching or adhered by any other method, including all papers, vinyl's, flexible woods, fabrics, borders, metals, upholstered wall systems, the fabric covered panels made of plastic/wood or pre-finished products of micro fiberglass, etc., acrovin and various plastic wall coverings such as wainscot, caps, corner molding and accessories; (2)

4

any and all preparation of walls and ceilings such as scraping or any methodology for removal of existing materials, including patching, leveling, skim coating and priming.

(c)    **Drywall Finishing** work will include, but not be limited to: (1) the preparation or leveling of any surface or substrate which is to receive a coating, finish and/or wall covering; this will include, but not be limited to, all levels of finishing and/or spackling of all surfaces, including gypsum wallboard taping and finishing, fire taping and all fire stopping systems, glaze coatings, skim coating or any other finishing system, spotting of nails/screws, finishing of corner beads/flex beads. Patching and sanding is within the system of preparing for finishes. (2) All stucco and dryvit systems will be performed by members of this International Union.

(D)    **Glaziers, Architectural Metal and Glass Workers:** General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, fabricating, distributing, handling or removal of the following: Glass and Glass substitutes used in place of glass, pre-glazed windows, retrofit windows systems, mirrors, curtainwall systems, window wall systems, suspended glass system, louvers, skylights, entranceways including automatic doors, patio doors, store front, column covers, panels and panel systems, glass hand rails, decorative metal as part of the glazing system, and the sealing of all architectural metal and glass systems for weatherproofing and structural reasons. Art glass, prism glass, beveled glass, leaded glass, automotive glass, protective glass, plate glass, window glass, wire glass, ribbed glass, ground glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, tempered and laminated glass, Thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above systems materials when in the shop or on the jobsite, temporary or permanent, on or for any building in the course of repair, remodel, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and

5

vinyl's, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and curtain wall systems; (4) the installation of automatic door entrances, door(s) and window (s) frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bathtub enclosures, storm sash where the glass becomes an integral part of the finished product, including the maintenance of all of the above; (5) bevellers, silverers, scratch polishers, abrasive blasters, flat glass wheel cutting, mitre cutters, gravers, hole drilling, machine operations belt machines and all machines used in the processing of glass, automatic beveling, silvering, grinding, polishing, unpacking and racking of glass, packing glass, glass cleaners in shops, mirror cleaning, assembling, framing and fabrication and assembling of all insulated and non-insulated units, fabrication and mounting of mirrors and the operations of all machines and equipment for these operations; (6) the selecting, cutting, preparing, designing, art painting, and installing of fused glass, thick facet glass in concrete and cementing of art glass, and the assembly and installing or removal of all art glass, engraving, drafting, etching, embossing, designing, abrasive blasting, chipping, glass bending, glass mosaic workers, cutters of all flat and bent glass; glass shade workers, and glaziers in lead or other metals; the fabrication and distribution of all glass and glass-related products; (7) any and all transportation, handling, unloading and loading of tools, equipment and materials will be performed by members of this International Union.

(E)    Paint Makers will include, but not be limited to all workers engaged in the mixing, testing, preparing and/or manufacturing of paint, coating, caulking, putty, sealants, etc. and handling of lead, color, oil, lacquer, varnish, synthetic resin, acrylic paints and coatings, etc., including any and all materials for the same.

(f)    Floor and Decorative Coverings Workers: Work will include, but not limited to: (1) measuring, cutting, fabrication, fitting, installing to be cemented, tacked or otherwise applied to its base and/or underlayment(s) wherever it may be, all materials whether used either as a decorative

6

covering, topping or as an acoustical appliance such as carpets of all types and designs, sheet rubber, sheet vinyl, pre finished hardwood floors, laminate floors and laminate floor systems, cork carpet, rubber tile, asphalt tile, tile, cork tile, interlocking tile, mastipave, composition in sheet or tile form and all derivatives of above; artificial turf and derivatives thereof, all resilient seamless materials such as epoxy, polyurethane, plastics and their derivatives, components and systems; (2) the fitting of all devices for the attachment of the above materials and the fitting of all decorative or protective trim to and adjoining the above materials which shall include the drilling and plugging of holes and attaching of strips, slats, nosing, etc, on any base and/or underlayment(s) where the above materials are to be installed or applied, such as drilling, plugging and slatting for installing or fastening carpet, the installing of all nosings, cap strips, corner beads and edgings of any material and the preparatory work of the craft for all of the aforesaid, which includes but is not limited to, substrate preparation and the application of all self leveling, trowelable and board underlayments; (3) the removal of the aforementioned installed material from its base and/or underlayment as required; (4) the cleaning of rugs and carpets and all drapery hanging, make-up and the installation of drapes and window treatments.

(G)      **Sign and Display:** Sign and Display Painters' work shall include, but not be limited to: (1) the making and installation of all signs and servicing of the same, designing, lettering and pictorial work of any kind including vinyl signs and vinyl substrates and the preparing for the finishing of same, be it by hand brush, roller, spray, mechanical or computer-aided and by any other method or process pertaining to same; (2) they shall have control of all branches, methods and processes of screen process work; tube bending and display work such as creating, designing, building and finishing of all display matter and its related operations used for advertising purposes, including all art work and lettering whether it is done by hand, mechanical or computer-aided or by any other method or process pertaining to same; (3) the construction, erection and maintenance of all billboards and all communication advertising will be done by members of this International Union.

(H)      **Display Convention and Show Decorators:** The display convention and show decorators'

and equipment, as used herein, shall include, but not to be limited to, brushes, rollers, spray painting equipment, coating applications, all miscellaneous hand and power driven tools, all robotic, computerized mechanical and manually operated abrasive equipment, shot, bead, water and related blasting equipment, containment systems, ventilation/dehumidification systems, vacuum recovery units, wet and dry vacuum systems and any and all related safety equipment, ladders, scaffolding, lifts and all other dedicated rigging, including the handling, erection and dismantling of same, the operation and maintenance of all types of compressors.

(L)    **Related Work:** Members of this International Union shall also have jurisdiction of: (1) all processing and procedures for decontaminated areas; (2) all clean-up of any of debris caused by or during the preparation and/or application of any work described in this Section.

(M)    **Technological Improvement Advancements, New or Substitute Systems or Process and/or New or Substitute Materials:** the jurisdiction of this International Union shall include and extend to any and all new or substitute systems or processes, new or substitute materials and technological improvements or advancements in any existing or new system, process or material that is referred to or incorporated in any of the provisions in the General Constitution or any Collective Bargaining Agreement to which the International or any of its subordinate bodies is a party .

## ARTICLE 3
## UNION SECURITY

3.1    All present employees who are members of the Union on the effective date of this agreement or on the date of execution of this agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on/or after the eighth (8th) day following the beginning of their employment, on and after the eight day following the effective date of this agreement, whichever is later.

9

work will include, but not be limited to: (1) the delivery, loading and unloading and the installation and removal of all exhibits (floor to ceiling) and related materials in connection with trade shows and conventions, including, but not limited to: trade show and convention booth assembly and disassembly; installation and removal of interior and exterior decorations, flags, drapes and other display materials; uncrating, assembly, installation, removal, disassembly and recrating of all commercial exhibits; (2) the installation and dismantling of furniture owned by the employer, the installation and removal of floor coverings and special event displays; (3) the construction, preparation, erection and maintenance of all signs, lettering, pictorial work, screen process work, show card writing, commercial exhibits and fabrication of advertising displays and pattern and sketch making, scale model making, the preparation of training aids and mockups and application of plastic, scotchlite and similar reflective materials.

(I)    **Scenic Artists and Designers:** Scenic Artists' and Designers' work will include, but not be limited to: models, sketches, carpenters drawings, painting for theatrical productions, motion picture settings and all various effects; the painting of properties and decorations which may be used to decorate stage, motion picture and TV settings, mural paintings, display creations, costumes and the art of make-up and its various effects.

(J)    **Metal Polishers:** Metal Polishers' work will include, but not be limited to: new construction and existing sites consisting of metal polishing, both initial and continuing maintenance which shall include, but not be limited to, coloring, lacquering, spraying, application of vinyl coatings, cleaning, polishing and finishing of ornamental and architectural iron, bronze, brass, nickel, aluminum, stainless steel and all metal specialty work.

(K)    **All Tools, Equipment and Materials:** (1) the handling, assembling, disassembling, operations, maintenance, storage and transporting of all tools, equipment and material used or that may be used by members of this International Union in performing their trade or work; (2) the loading and unloading of any and all materials, tools and equipment will be done by any members and units coming under the International Union's jurisdiction; (3) tools, material

8

## ARTICLE 4
## ADMINISTRATION DUES

4.1    Every Employer signatory to this agreement hereby agrees to check-off from wages of any employee employed by such employer during the term of this agreement, administration dues in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner.

(A)    The Union will notify the Employer in writing of the amount of administrative dues specified in the bylaws, and will submit to the Employer a copy of the bylaws or the applicable bylaw provision.

(B)    For each pay roll period, the Employer will deduct from the wages of each employee the amount specified in the bylaws based on the gross wages earned during said payroll period, and will accumulate said deductions to the end of the month. The Employer will remit said deduction to District Council 711 on or before the 15th of each month.

(C)    When a member of another District Council or Local Union works for his/her home Employer within the jurisdiction of District Council 711, the Employer will deduct Administration dues from the employee(s), from another District Council or Local Union, the amount specified in the bylaws of District Council 711 based on the gross wages earned during said payroll period, and accumulate said deductions to the end of the month. The Employer will remit said deductions to the District Council 711 on or before the 15th of each month.

## ARTICLE 5
## EXCLUSIVE HIRING HALL

The Union shall be the sole and exclusive source of referrals of applicants for employment as painters, tapers and glaziers.

The Employer shall have the right to reject any applicant for employment.

10

The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, or regulations, bylaws, constitution provisions, or any other aspect or obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedures:

5.1     The Union shall establish and maintain an open and non-discriminatory referral system for the employment of journeymen and apprentice painters, tapers and glaziers.

5.2     The Employer, upon requesting referral of job applicants, shall call the zone where the job is located and specify the following to the Union:

(A)     Number of persons required

(B)     Work or project location

(C)     Type of work

(D)     Individuals requested by name

(E)     Specialty involved

(F)     Any information to assist with proper referrals

5.3     The Union shall refer workers to the Employer in the following manner and order:

(A)     If available, specifically requested individuals previously employed by said Employer may be recalled for a period of twenty four (24) months from date of layoff.

(B)     Those available whose names are entered on a seniority list, specialties included, posted and maintained by the Union.

11

5.4    The Employer shall have entire freedom of selectivity in hiring and may reject, layoff or terminate any person referred to it by the Union.

(A)    In the event the Union is unable to furnish qualified persons for employment, the employer may procure them from any other source or sources.

5.5    The selection of applicants for referrals shall be on a non-discriminatory basis. Seniority shall be based upon the length of employment in the trade of jurisdiction and in a particular area commencing on the first day of employment. After unemployment in the trade or jurisdiction for a one (1) year period, seniority shall commence upon the subsequent employment date.

5.6    An Employee who quits a job, except for medical necessity, or if fired for cause and terminated, may not be recalled by any other Employer and shall assume the position at the bottom of the referral list and, seniority notwithstanding, shall remain there so long as any other qualified applicant seeks referral. An employee who quits or is fired for cause and is terminated a second time during the length of the agreement shall no longer qualify for referral.

5.7    Employer requests for general foreman or foreman shall be honored without regard to the out of work list.

5.8    (A)    All employees must submit to an annual drug and alcohol test and will carry a card to certify testing and results thereof. The Employer has a right to demand a valid drug test as a requisite to employment. The Employer has the right to terminate upon non-compliance. After testing positive, the employee, at his expense, must certify that he/she is clean in writing to the Union.

(B)    In order to qualify for scheduled wage increase, all active employees must complete a minimum of ten (10) hours of safety training annually, after work hours. The Education and Training Fund shall maintain each person's status. Members will be issued a card certifying that they have completed training.

(C)    Employees will be encouraged to upgrade their skills at training seminars, after work hours, set up by the

12



Education and Training Fund, in cooperation with the Employers.

5.9    No provision of this agreement shall be based upon or in any way affected by Union membership, bylaws, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies, or requirements. Membership or non-membership in the Union shall not be considered in placing the name of any qualified person on the seniority records of the Union and shall not in any way affect the seniority accorded anyone.

5.10    A notice incorporating the terms and conditions relating to the hiring system shall be conspicuously posted at the Union's office.

## ARTICLE 6
## WAGES & SCHEDULES

6.1    Classification of Painters/Tapers work;

(A)    New Construction of all kinds, except as described in (c).
   (1) Paperhanging, Wall covering

(B)    Repainting, paperhanging work and preparation therefore on jobs where no major alterations occur, and where there are not more than three (3) other Union trades other than painter and allied trades present on that job, but excluding bridges, stacks, elevated tanks, and generating stations, the interior of all tanks and ground tanks over sixty (60) feet in height.

(C)    Painting of residences and apartment buildings up to three (3) stories if height.

(D)    Industrial:    Nuclear plants, Towers, Steeples, Dams, Hangers, Elevated tanks, Tank farms and refineries, excluding office and storage buildings. Any work that would require cables as a platform to work on.

(E)    Bridges: All bridges that span major waterways, railroad bridges, bridges over canyons, overpasses, viaducts and appurtenances. (Excluding pedestrian bridges in

13

Casinos, Condominiums, Hotels, Industrial plants, Educational Facilities, Hospitals and offices)

In the event of a dispute, the Joint Trade Board shall determine the classification of the specific project.

6.2    Spraying, sandblasting, lead abatement, pneumatic and power tools (over 115V), work on tanks, stacks, open steel, cables, swing scaffolds, and exterior work over three (3) stories; work above thirty (30) feet from pole trucks, scissor lifts or other lifting devices shall be at the listed wage rates.

6.3    Glaziers Installation (Rack) Schedule:

(A)    One (1) worker for door lights and similar sizes up to 42" x 84".

(B)    This does not apply to steel or wood sash of typical sizes and may be adjusted on prevailing rate projects.

(C)    On all plate glass:

Glass up to 170 united inches—————————two workers
Glass from 171 united inches to 191 united inches—— three workers
Glass from 191 united inches to 221 united inches—— four workers
Glass from 221 united inches to 240 united inches——five workers
Glass from 240 united inches to 250 united inches——six workers
Glass from 250 united inches to 260 united inches——seven workers
Glass from 260 united inches to 272 united inches——eight workers
Glass from 272 united inches to 284 united inches——nine workers
Glass from 284 united inches to 290 united inches——ten workers
Glass from 290 united inches to 305 united inches——eleven workers
Glass from 305 united inches to 312 united inches——twelve workers

(D)    Rack schedule to be used as a guide for safety reasons. Job conditions and special circumstances shall be considered.

(E)    On 3/8 inch plate glass twenty five percent (25%) more workers shall be used. On 1/2 inch plate glass fifty percent (50%) more workers shall be used. On 3/4 inch plate glass one hundred percent (100% more men shall be used. On larger glass, abnormal settings, etc. additional workers shall be used for safety purposes. Special circumstances will be considered.

14



(F)    On insulating units, the total glass thickness shall determine the number of workers by the above rack schedule. At least fifty percent (50%) more workers shall be used on insulating units.

6.4    Increases for Painters, Paperhangers/Wall coverers for each 6.1 work classification
For Painters work classification 6.1 (A), as described in Article 6 Sec. 6.1 (A)

|  | 5/1/2006 | 5/1/07 | 11/1/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $1.35 | $1.00 | $1.00 | $1.05 | $1.05 | $2.10 | $2.20 |
| Package | $46.71 | $47.71 | $48.71 | $49.76 | $50.81 | $52.91 | $55.11 |

6.2 Spray, Swing scaffold, etc. shall be Ten (10%) percent above wage rate

For Paperhangers/Wall coverers work classification 6.1 (A) (1 ) as described in Article 6 Sec. 6.1 (A) 1

|  | 5/1/2006 | 5/1/07 | 11/1/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $2.55 | $1.00 | $1.00 | $1.05 | $1.05 | $2.10 | $2.20 |
| Package | $47.71 | $48.71 | $49.71 | $30.76 | $31.81 | $33.91 | $56.11 |

For Painters work classification 6.1 (B), as described in Article 6 Sec. 6.1 (B)

|  | 5/1/2006 | 5/1/07 | 11/1/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $1.55 | $0.80 | $0.80 | $0.84 | $0.84 | $1.68 | $1.76 |
| Package | $37.37 | $38.17 | $38.97 | $39.81 | $40.65 | $42.33 | $44.09 |

6.2 Spray, Swing scaffold, etc. shall be Ten (10%) percent above wage rate

For Paperhangers/Wall coverers work classification 6.1 (B), as described in Article 6 Sec. 6.1 (B)

|  | 5/1/2006 | 5/1/07 | 11/1/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $2.55 | $0.80 | $0.80 | $0.84 | $0.84 | $1.68 | $1.76 |
| Package | $38.17 | $38.97 | $39.77 | $40.61 | $41.45 | $43.13 | $44.89 |

For Painters, Paperhangers/Wall coverers work classification 6.1 (C), as described in Article 6 Sec. 6.1 (C)

|  | 5/1/2006 | 5/1/07 | 11/1/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $0.54 | $0.65 | $0.65 | $0.68 | $0.68 | $1.37 | $1.43 |
| Package | $30.37 | $31.02 | $31.67 | $32.35 | $33.03 | $34.40 | $35.83 |
| Paperhanger | $30.91 | $31.56 | $32.21 | $32.89 | $33.57 | $34.94 | $36.37 |

15

# INDUSTRIAL

For Painters work classification 6.1 (D) Industrial, as described in Article 6 Sec. 6.1 (D)

| | 5/1/2006 | 5/1/07 | 11/01/07 | 5/1/08 | 11/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|---|---|
| Increase | $2.85 | $1.00 | $1.00 | $1.05 | $1.05 | $2.10 | $2.20 |
| Package | $48.21 | $49.21 | $50.21 | $51.26 | $52.31 | $54.41 | $56.61 |

6.2 Spray, Swing scaffold, etc. shall be Ten (10%) percent above wage rate

Wage increases for work classification 6.1 (B) Industrial Repaint

Wage shall be eighty (80%) percent of the above 6.1 (D) wage rate

6.2 Spray, Swing scaffold, etc. shall be Ten (10%) percent above wage rate

## BRIDGE

Wage increases for work classification Bridge, as described in Article 6 in Sec 6.1 (E)

| | 5/1/2006 | 5/1/07 | 5/1/08 | 5/1/09 | 5/1/10 |
|---|---|---|---|---|---|
| Increase | | $4.00 | $4.00 | | $4.00 |
| Package | $54.03 | $58.03 | $62.03 | $62.03 | $66.03 |

The Union shall advise the Employers of the increase distribution thirty days prior to the above date.

Schedule A, B, C, D and E: For Wage and Benefits for all work classifications, Forman and Gen. Forman for May 1, 2006 to April 30, 2007 as attached hereto.

6.5    (A)    Apprentice rates shall be the following percentages of the base rate as described in work classification

First  4 months-------30%
5 to  8 months-------40%
9 to 12 months-------50%
13 to 16 months-------60%
17 to 20 months-------70%
21 to 24 months-------75%

16

(B)    The change in rate shall apply after regular attendance at apprentice school and passing regular skills test. Journeyman status after 6000 hours of training.

| | | |
|---|---|---|
| 25 to 28 months——————80% | | |
| 29 to 32 months——————85% | | |
| 33 to 36 months——————90% | | |

(C)    Fringe benefits shall be a percentage (%) of the base wage listed in wage classification 6.4 (A) as follows:

| Year | H&W | Pension | Annuity |
|---|---|---|---|
| First | 13% | -0- | -0- |
| Second | 14% | .50 | 4% |
| Third | 14% | 1.00 | 8% |

6.6     Effective May 1, 2006 the Employer shall deduct $1.00 per hour from the pay of all painters, tapers and glaziers. The deductions shall be paid into the Vacation Fund of District Council 711.

6.7     On jobs of four (4) or more employees, one (1) person shall be designated as foreman. A general foreman shall be designated on jobs of fifteen (15) or more employees.

6.8     All employees shall be paid weekly at least 30 minutes prior to the end of the  work day. Not more than three (3) days pay shall be held back for the period between the close of the pay period and pay day. A statement of earnings and deductions shall accompany the pay.

6.9     Employees shall be notified and paid in full at least thirty (30) minutes before being laid off at lunch or quitting time.

6.10     Employers who send employees to jobs outside the territorial jurisdiction shall pay the expense of travel, room and board.

6.11     Fringe benefit payment shall not apply to bonuses paid to key employees.

17

## ARTICLE 7
## HOURS & OVERTIME

7.1    The regular forty (40) hour week and eight (8) hour work day shall begin no earlier than 7:00 am and terminate no later than 5:30 pm, Monday through Friday. The Union and Employer shall agree upon a starting time other than 8:00 am.

7.2    (A)    Overtime work on Saturday and after the regular work day shall be at the rate of time and one half, except as in 7.2(C)

(B)    Work on Sunday and holidays shall be at the double time rate, except as in 7.2 (c)

(C)    For classifications 6.1(B) and 6.1(C) eight hour day, forty hour week (Monday through Sunday inclusive). All work over eight (8) hours in any one day or all work over forty (40) hours in any one week shall be paid at the rate of time and one half.

(D)    For work classification 6.1 (B) and (C), depending on job conditions, a ten (10) hour a day, four (4) day week may be established at regular rates without overtime compensation, (Monday through Sunday inclusive). The use of this Article must have the approval on the Union.

(E)    For work classification 6.1 (A), depending on job conditions, a ten (10) hour a day, four (4) day week may be established at the regular rates without overtime compensation, (Monday through Friday only). The use of this article must have the approval from DC711 Business Manager.

7.3    Employees shall be allowed five (5) minutes before lunch and ten (10) minutes before quitting time to wash and clean up; spray painters and sandblasters shall be allowed thirty (30) minutes at quitting time.

(A)    Employees shall receive an unpaid thirty (30) minute meal break after ten (10) hours of work.

18

(B)    Employees shall receive a ten (10) minute break during the first half of the work day.

7.4    Employees shall not report to the job earlier than fifteen (15) minutes prior to starting time. Foremen and general foremen may start thirty (30) minutes prior to starting time and remain thirty (30) minutes after quitting time.

7.5    Except for circumstances beyond the control of the employer, if an employee is not advised that there will be no work for him/her on an ensuing day and the employee reports for work at the proper time and then has no work assigned him/her, the Employer shall pay such employee two (2) hours pay.

(A)    Employees may require that employees remain on the job or in the shop for the periods indicated above for which they are paid.

(B)    In the event weather conditions require the stoppage of work on any day after work has begun, employees shall be paid to the next full hour.

7.6    If an employee fails to report to work and the Employer finds he/she cannot use the employee upon his/her return to work, the Employer shall have the option of either paying off the employee at once or requesting him/her to wait for any wages due him/her until the next regular pay day. Waiting time shall not enter into the settlement.

7.7    The following are recognized holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Presidential Election Day-afternoon (a full 8 hour day at regular wage is permitted prior to noon), Veterans Day, Thanksgiving Day, and Christmas Day.

7.8    In the event work is lost due to weather or job conditions, work may be accomplished on Saturday, Sunday at the regular straight time rate to make up for the lost time.

7.9    (A)    Ten percent (10%) shall be added to the previously indicated wage rates for any eight (8) hours work

19

outside the regular work day. Fifteen percent (15%) shall be added to the wage rates for any second shift outside the regular work day.

(B)     In addition to the added amounts in 7.9(A), when three (3) shifts exist, the second shift shall receive eight (8) hours pay for seven and one half (71/2) hours work; the third shift shall receive eight (8) hours pay for seven (7) hours work.

(C)     The above applies to work classification 6.1(A) only.

## ARTICLE 8
## CONTRACTUAL RELATIONS & OBLICATIONS

8.1     One member of the firm is allowed to work with the tools and a contractor is one that employs, on average, at least one person throughout the year.

8.2     Each Employer shall carry comprehensive kinds of insurance such as, but not limited to, worker's compensation, public liability and property damage on equipment, automotive and otherwise, when used by its employees, as well as other coverage carried by custom or practice in this industry by contractors. Proof of such coverage is required, in writing, to the Union at least annually or more often if requested by the Union. In the event the insurance coverage is cancelled, the Union reserves the right to suspend this agreement, until the aforesaid insurance coverage has again been supplied and proof of such coverage, in writing, is received by the Union.

8.3     Each Employer with one or more employees agrees as a matter of policy to elect, petition and qualify to become immediately before the commencement of work, a covered Employer as permitted by the terms of the Unemployment and Temporary Disability Benefits Act of New Jersey. The Union shall be kept informed of the Employers' acts of compliance and proof of compliance or rejection by the State of New Jersey shall be immediately provided to the Union by the Employer. The purpose of this paragraph is to provide unemployment and temporary disability benefits for each employee on every job or in the shop. The temporary disability provision of the law, commonly known as the "State



20

Plan", shall be adhered to by each Employer for the benefit of the employees in the unit, unless the Employer has a state approved private plan.

8.4    The Employer agrees to provide immediate medical attention and hospitalization, if necessary, to any employee injured on the job, at no cost to the employee.

8.5    Except as qualified in 8.5(A), on or before the 15th of each month, the Employer shall remit to the Union or its Administrator the entire amounts deducted from wages, as required by this agreement and owing as well as all contributions required by this agreement as to each employee for the previous month.

    (A)    Employers who do not have an acceptable three (3) year record of payments in this jurisdiction shall make payments of all fringe benefits, vacation funds and administrative dues to the shop steward or other person designated by the Union on a weekly basis.

    (B)    If an Employer fails to make contributions in accordance with the agreement after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedures or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

8.6    The Union agrees that journeymen will not be referred to a builder unless extenuating circumstances justifies the referral and the Council is consulted prior to providing any employees.

    1.    The use of one time agreements shall be used within the meaning of ONE TIME

8.7    In the event that a builder or general contractor owes monies for work performed on a job to a contractor who is signatory to an agreement with this Union, they will endeavor

21

to do everything legally possible to see that all just debts owed to the contractor shall have been settled satisfactorily.

## ARTICLE 9
## WORKING CONDITIONS

9.1    The use of spray equipment is allowed to paint acoustical surfaces, ceiling grid, furniture, bar-joist, structural steel, corrugated ceiling and walls (including pipes, ducts, conduit, hangers, steel, etc. adjacent thereto), wood walls and ceilings, where exposed joists are thirty (30) inches or less on centers, fin type radiation, floors, louvers and grating, block fill with backrolling, metal pan stairs and spindle railing, plastic and multi-color materials, lacquers and any other material deemed not brushable, and any and all work at housing projects. In the event a second employee is necessary in a spray painting operation, he/she shall also receive the spray rate provided he/she works in the immediate work area at all times the equipment is in use. He/She shall also relieve and otherwise assist the other person.

(1)    The use of eighteen inch rollers on ceilings shall only be used for purpose of back rolling spray applications.

(A)    The Joint Board shall study other processes, materials and surfaces and shall determine those which shall be added to those mentioned herein.

(B)    The Business Manager shall be notified when spraying is contemplated.

9.2    The unrestricted use of tools of the painting trade is permitted on work classified in 6.1(A) (prevailing wage jobs); 6.1B; and 6.1C.

9.3    It is understood and agreed and recognized that traditional hand tools to perform work with, namely, hawks, trowels, bread pans, and broad knives, will be supplied by the Employees. The Employer shall furnish all other tools and equipment to work with and if at any time such tools or equipment of any material or work conditions shall constitute a hazard to health or physical safety, the Employer shall not permit his/her employees to use such tools, equipment or materials or to work under such conditions. Employees refusing to work with such tools, equipment or materials or

22



under such working conditions shall not be discriminated against by the Employer. Any disagreement arising hereunder shall be submitted to the Joint Trade Board as provided by this Agreement. No Employee shall be discriminated against for his/her refusal to work with or use stills, or machine type tools for which they have not received training. There shall be no restrictions on the use of materials, tools, equipment or other labor-saving devices or on production output by employees; provided however the employee has been qualified by District Council 711 JATC Fund to the use of the tools involved. Past practice and policy is and shall continue to be recognized, meaning mechanical and machine type tools will not be used without the express consent and permission of the Union which will not be open to dispute, except for trained or experienced employees of DISCA members.

9.4    The Employer shall abide by the terms of the Safety Act of the State of New Jersey as well as those of the Federal OSHA.

## ARTICLE 10
## FRINGE BENEFIT FUND

10.1    The Employers and the Union have established an Education and Training Fund to be known as the District Council 711 Education and Training Fund. Effective May 1, 2006, each Employer shall contribute to the Apprenticeship and Training Fund the amounts indicated in Schedule A

10.2    The Agreement between the Employers and the Union parties to this Agreement regarding payments to the International Joint Painting, Decorating and Drywall Apprenticeship and the Manpower Training Fund is as follows:

(A)    Commencing with first day of May, 2006, and for the duration of this Agreement and any renewals or extensions thereof, the Employer, as defined in the Agreement and Declaration of Trust executed by and between the International Union of Painters and Allied Trades and Employer associations in the industry, agrees to make payments to the National Apprentice Fund for each employee covered by this Agreement, as follows:

23

(B)    For each hour, or portion thereof, for which an employee receives pay, the Employer shall make a contribution in the amount indicated in Schedule A to the above named Apprenticeship Fund.

(C)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E)    The payments to the Training Fund required above shall be made to the National Training Fund which was established under Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the Employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.    (A)    Commencing with the first day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of in the amount indicated in Schedule A to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry annuity Plan shall be as indicated in Schedule A.

24



(C)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to apprentices, helpers, trainees, and probationary employees.

(E)    The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he/she had actually signed the same.

2.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

The Employer will not engage in any litigation against the Union, on a subrogation theory, contribution theory or otherwise, so as to obtain money judgment from it in connection with any work related disease, sickness, death, injury, or accident.

10.4    Health and Welfare Fund – By Agreement and Declaration of Trust dated June 1, 1990, the Association and Union Established the Painters District Council 711 Health and Welfare Fund.

(A)    Employer contributions shall be in the amounts indicated in Schedule A.

10.5    Fund Trustees shall be selected as indicated in Article 17 Sec 17.1

25

## ARTICLE 11
## COOPERATION AND ADVANCEMENT FUNDS

11.1    Labor Management Cooperation Funds:

1.    Commencing as of the effective date of this Agreement, and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the Painters and Allied Trades Labor Management cooperation Fund for each employee covered by this Agreement, as follows:

(A)    For each hour or portion thereof, for which an employee receives pay, the Employer shall make contribution of the amount indicated in Schedule A to the Fund.

(B)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, journeymen, and probationary employees.

(D)    The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust as amended from time to time, establishing the Fund.

2.    The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3.    All contributions shall be made at such times and in such manner as the Trustees require, and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

26

11.2    Industry Advancement Fund:

1.    Effective May 1, 2006 each Employer shall make a contribution of three cents ($.03) per hour per Painter (contributions may be increased as determined by the Council), fifteen cents ($.15) per hour per Taper, and fifteen cents ($.15) per hour per Glazier for each hour worked by each employee to the "Industry Advancement Fund" heretofore established and administered by trustees appointed by each of the three (3) individual Associations solely for the advancement, and improvement of the trade and the payment of expenses in carry out such programs and responsibilities.

11.3    Stars program (Safety Training Awards Recognition)
~~By Agreement and Declaration of Trust dated~~ ~~####~~ the Association and Union Established the Painters District Council 711 Stars Program To Be Administered By The education + training Funds.

(A) Employer contributions shall be $0.02 for each hour, or portion thereof, for which the employee receives pay.

**ARTICLE 12**
**POLITICAL ACTION FUND**

12.1    Employers signatory to this Agreement shall deduct from the wage of each Union employee, the voluntary sum of ten cents ($.10) for each hour worked as a non-deductible political contribution to the DC#711 Political Action Committee (PAC).

12.2    The obligation of the Employer shall apply only as to those employees who have voluntarily signed a valid deduction authorization card.

(A)    The Union shall advise the Employer of any employee who has not signed a deduction authorization card.

27

# ARTICLE 13
## SAFETY

13.1    The Employer shall, at all times, provide safe tools, materials and equipment and safe working conditions. If at any time, in the opinion of the employee, such tools, materials, or equipment or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall have the right to refuse to work with such tools, material and equipment or under such hazardous conditions unless or until they are made safe. No employee shall be dismissed, disciplined or otherwise discriminated against, nor shall his/her pay be withheld, for refusal to work with such unsafe tools, materials, or equipment or under such unsafe or hazardous working conditions. The final decision as to safety of tools and working conditions shall be made by the general foreman, foreman or the supervisory person competent in safety measures.

13.2    An employee who does not follow safety procedures or instructions and causes, thereby, and Employer to receive an OSHA fine, shall pay an amount equal to the lesser of 10% of the OSHA fine or twenty-five hundred dollars ($2,500.00) to the Joint Trade Board as determined by said board.

# ARTICLE 14
## UNION REPRESENTATIVES & SHOP STEWARDS

14.1    The Union Business Manager is the sole agent on behalf of the Union to take any action in respect to strikes or other interferences with work. There shall be no overtime work without the permission of the Business Manager.

14.2    The Business Manager and/or assistant shall have the right to visit any building, shop or job in the discharge of his/her duties.

14.3    At the discretion of the Union a shop or job steward shall be referred in all shops/jobs. Steward may be appointed from the workers on the job.

(A)    The shop steward may handle routine grievances on the job but is not authorized to call work stoppages or make any agreement which contradicts, changes, modifies or alters the terms of this Agreement.

28

(B)    In the event of emergent difficulties, he/she shall so notify the Business Representative.

(C)    Except for a general foreman and a foreman, the steward is senior and, provided he/she remains qualified to do the work, the shop or job steward shall be the last person laid off among the employees in the bargaining unit in any shop and/or job.

## ARTICLE 15
## SUBCONTRACTING

15.1    Subcontracting shall not be permitted except to signatory contractors whose employees receive comparable wages, hours of work and working conditions as hereunder.

(A)    Unemployed Union painters may take work on a contract basis not to exceed one thousand dollars ($1,000.00). The member must notify the Union before starting the job. If there is no objection based upon the fact that an Association member bid the job, the Union member may commence the work. A Union member in violation shall be brought before the Joint Trade Board and if found guilty, shall be fined one thousand dollars ($1,000.00) for the first offense, two thousand dollars ($2,000.00) for the second offense, and expelled from the Union for the third offense.

## ARTICLE 16
## PRESERVATION OF WORK CLAUSE

16.1    To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (though family members or otherwise) management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.



16.2     All charges of violations of section 1 of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board or Arbitrator shall be able, at the request of the Union, to require an Employer to pay: 1) to affected employees covered by this Agreement, including applicants registered for employment by the Union the equivalent of wages those employees have lost because of the violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions and delinquent contributions that resulted from the violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitration, judicial, or government (for example, the National Labors Relations Board) channels.

16.3     If, after an Employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that if such litigation determines that the Employer is not in violation of this Article, the prevailing party shall be entitled to said fees from the losing party. This section does not affect other remedies, whether provided by law or this Agreement that may be available to the Union and/or Joint Trust Funds.

## ARTICLE 17
## JOINT TRADE BOARD

17.1     The parties shall establish and maintain a Joint Trade Board composed of ten (10) members, five (5) representing the Union (including the Business Manager) and five (5) representing the Council (including the Executive Director).

30

(A)   The Union and Employer members shall include representatives of the following trade: five (5) Painters.

(B)   Eight (8) members, four (4) representing each party, shall constitute a quorum. Decisions shall be made by majority vote provided that the union representatives and Association representatives shall have equal voting strength with respect to each vote. Members of the Joint Board shall choose a chairman and co-chairman to serve such terms as agreed upon by the Board, provided that one such officer shall represent each party.

17.2    The Joint Board shall meet regularly at least once every three (3) months. Special meetings may be called by the chairman or co-chairman when prompt hearing and decision is required in any dispute. ......

17.3    The Joint Board is empowered to hear and decide all grievances and disputes which may arise between the parties as to the interpretation or application of this Agreement; to award or assess remedies, damages and penalties for violations of this Agreement provided, however, any assessment of damages shall not exceed Five Thousand Dollars ($5,000.00); to issue interpretive rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intention of this Agreement; to investigate all grievances and disputes submitted to it, including audits of records; to recommend amendments to or change in the Agreement but only upon the written request of both parties; to appoint such persons or committees as necessary to aid the Board in the performance of its duties; and to demand of those who repeatedly violate this Agreement the posting of a cash or surety bond to assure future compliance.

17.4    All grievances and disputes shall be submitted in writing to the chairman and co-chairman.

17.5    If all facilities to resolve disputes over the interpretation of the terms or conditions of an existing agreement have failed of settlement, both parties agree before strike or lockout, or the resort to proceedings before the National Labor Relations Board, State Government Boards or the courts, to submit the dispute to the Joint National Trade Board for binding decision. The Joint National Trade Board is

31

hereby authorized and empowered to delegate any question or issue submitted, to a committee of two (2), one (1) of whom shall be appointed by each of the respective presidents of the IUPAT and the National Trade organization of the effected coalition member for the purpose of investigation, making recommendations to the Board, or, in fact, resolving or determining the particular issue, which determination shall be binding with the same force and effect as though rendered by the Board itself.

17.6    The remedies and sanctions specified in this section are in addition to other remedies and sanctions that may be permitted by other provisions of this agreement or by law.

17.7    There shall be no strike or lockout on any job over and grievance or dispute while it is being processed through this grievance procedure and until the said procedure has been exhausted. However, and not withstanding any contrary provision of this Agreement, the Union may remove employees from any job or jobs of an individual Employer who fails or refuses to pay wages and fringe benefits, or refuses to stand trial under these procedures, or fails to comply with a final and binding decision issued at any level of this grievance procedure. Nothing stated in this section shall preclude the Employer from resorting to the grievance procedure with respect to any action or sanction taken or imposed by the Union hereunder.

17.8    The Board shall maintain full and complete records and minutes of its proceedings which may be inspected at any reasonable time by the parties to this Agreement.

17.9    At the commencement of each contract year or upon beginning of work within the territory during each contract year, each Employer shall pay to the Joint Trade Board the sum of Fifty Dollars ($50.00).

(A)    All funds shall be used a determined by the Board for the purpose of advertising, advancing the trade, protecting the standards of work and employment, training employees in the use of new materials and work techniques, protecting the combined interests of employees and Employers alike, advancing the trade, educational programs, and the

32

payment of all expenses of the Board on carrying out said programs and responsibilities.

## ARTICLE 18
## SUCCESSOR CLAUSE

This Agreement, and any supplements thereto, hereinafter referred to collectively as "Agreement" shall be binding upon the parties hereto, their successors, administrators, executors and assignees.

In the event the Employer's business is, in whole or in part, sold, leased, transferred, or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such business and cooperation shall continue to be subject to the terms and conditions this Agreement for the life thereof.

It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc. of the business and operation covered by this agreement or any part thereof. Such notice shall be in writing with a copy of said notice forwarded to the Union, at the time the seller, transferor, or lessor executes a contract or transaction as herein described. The Union shall also be advisee of the exact nature of the transaction, not including financial details.

In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligation of this Agreement, the Employer (including partners thereof) shall be liable to the Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee, or lessee has agreed in writing to assume to obligations of this agreement.

33

## ARTICLE 19
## GENERAL SAVINGS CLAUSE

If any article of this agreement should be invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any article or section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement or the application of such article or Section to persons or circumstances other than those as to which it has been invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any article or Section is held invalid or enforcement of or compliance with any Article or Section has been restrained, as above set forth, the affected parties shall meet at the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a satisfactory replacement within sixty (60) days after beginning of the period of invalidity or restraint, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this Agreement to the contrary.

34

# ARTICLE 20
## DURATION CLAUSE

20.1    Previously negotiated existing Agreement shall remain in full force and effect until and including March, 31 2011. Thereafter said Agreement shall be null and void.

20.2    This Agreement shall be in full force and in effect until and including March 31, 2011, and shall continue from year to year unless written notice of desire to cancel or terminate the agreement is served by either party upon the other not less than sixty (60) and not more than ninety (90) days prior to March 31st, of any subsequent year.

20.3    Where no such cancellation of termination is served and the parties desire to continue said Agreement, but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a written notice not less than sixty (60) and no more than ninety (90) days prior to March 31 of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such agreement. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon. Nothing herein shall preclude the parties from making revisions or changes in this Agreement, by mutual consent, at any time during its term

IN WITNESS WHEREOF the parties hereto have set their hands and seals, this 31 day of August, 2006 to be effective as of May 1, 2006 , 2006 to be effective as of Except as to those provisions where it has been otherwise agreed between the parties.

PAINTERS DISTRICT COUNCIL #711
STATE OF NEW JERSEY
International Union of Painters
and Allied Trades

_____
Date    8.29.06

GARDEN STATE COUNCIL,
INC.

_____
Date    08/29/06

35

36-37



## SCHEDULE A
### Painters
Wage rates effective
May 1, 2006 through April 30, 2007
**Work Classification 6.1 (A) New Construction of all kinds**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $32.00 | $4.00 | $3.84 | $6.08 | $0.64 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $46.71

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $35.20 | $4.00 | $4.23 | $6.69 | $0.71 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $50.98

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $36.80 | $4.00 | $4.42 | $7.00 | $0.74 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $53.11

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |



38



### SCHEDULE A
### Painters
### Wage Rates effective
### May 1, 2006 through April 30, 2007
### Work Classification 6.2

**Journeyman**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $35.20 | $4.00 | $4.23 | $6.69 | $0.71 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $50.98

**Foreman**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $38.72 | $4.00 | $4.65 | $7.36 | $0.78 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $55.66

**General Foreman**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $40.48 | $4.00 | $4.86 | $7.70 | $0.81 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $58.00

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

39



**SCHEDULE A**
Paperhanger/wall covering
Wage rates effective
May 1, 2006 through April 30, 2007
Work Classification 6.1 (A) 1 Paperhanger

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $32.75 | $4.00 | $3.93 | $6.23 | $0.66 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $47.72 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $36.03 | $4.00 | $4.33 | $6.85 | $0.72 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $52.08 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $37.67 | $4.00 | $4.52 | $7.16 | $0.76 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $54.26 |

Deducted from Member
Administration Dues       5% of Gross Wage
PAC                          $0.10 per hour
Vacation Fund            $1.00 per hour

40





**SCHEDULE B**
Paperhanger/wall covering
Wage rates effective
May 1, 2006 through April 30, 2007
Work Classification 6.1 (B) Paperhanger

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $25.85 | $4.00 | $3.07 | $4.86 | $0.52 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $38.18 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $28.14 | $4.00 | $3.38 | $5.35 | $0.57 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $41.59 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $29.42 | $4.00 | $3.53 | $5.59 | $0.59 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $43.28 |

Deducted from Member

| Administration Dues | 5% of Gross Wage |
|---|---|
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

41

**SCHEDULE B**
Painters
Wage rates effective
May 1, 2006 through April 30, 2007
**Work Classification 6.1 (B)**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $24.97 | $4.00 | $3.00 | $4.75 | $0.50 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $37.37

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $27.47 | $4.00 | $3.30 | $5.22 | $0.55 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $40.69

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $28.72 | $4.00 | $3.45 | $5.46 | $0.58 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $42.36

Deducted from Member

| Administration Dues | 5% of Gross Wage |
|---|---|
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

42



**SCHEDULE B**
Painters
Wage rates effective
May 1, 2006 through April 30, 2007
Work Classification 6.2 Repaint

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $27.47 | $4.00 | $3.30 | $5.22 | $0.55 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $40.69 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $30.22 | $4.00 | $3.63 | $5.75 | $0.61 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $44.36 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $31.59 | $4.00 | $3.79 | $6.01 | $0.64 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $46.18 |

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

43



**SCHEDULE C**
Painters
Wage rates effective
May 1, 2006 through April 30, 2007
**Work Classification 6.1 (C)**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $20.57 | $2.85 | $2.47 | $3.91 | $0.42 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $30.37

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $26.63 | $2.85 | $2.72 | $4.30 | $0.46 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $33.11

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $23.66 | $2.85 | $2.84 | $4.50 | $0.48 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $34.48

Deducted from Member
Administration Dues    5% of Gross Wage
PAC    $0.10 per hour
Vacation Fund    $1.00 per hour

44



**SCHEDULE C**
Painters
Wage rates effective
May 1, 2006 through April 30, 2007
**Work Classification 6.2 (C)**

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | **Journeyman** Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $22.63 | $2.85 | $2.72 | $4.30 | $0.46 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $33.11 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | **Foreman** Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $24.90 | $2.85 | $2.99 | $4.74 | $0.50 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $35.86 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | **General Foreman** Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $26.03 | $2.85 | $3.13 | $4.95 | $0.52 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $37.63 |

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

45

SCHEDULE D
Painters
Wage Rates effective
May 1, 2006 through April 30, 2007
Work Classification, 6.1 (D) Industrial

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $33.11 | $4.00 | $3.98 | $6.29 | $0.67 | $0.05 | $0.05 | $0.03 | $0.03 |
| | | | | | | | | Package Rate $48.21 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $36.43 | $4.00 | $4.38 | $6.93 | $0.73 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $52.62 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $38.08 | $4.00 | $4.57 | $7.24 | $0.77 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $54.81 |

Deducted from Member
Administration Dues        5% of Gross Wage
PAC                        $0.10 per hour
Vacation Fund              $1.00 per hour

46



**SCHEDULE D**
Painters
Wage rates effective
May 1, 2006 through April 30, 2007
Work Classification 6.2 Industrial

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|--------------|------------------|----------------------|-----------------------------------|------|-----|-----|-------|
| $36.43 | $4.00 | $4.38 | $6.93 | $0.73 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $52.62 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|--------------|------------------|----------------------|--------------------------------|------|-----|-----|-------|
| $40.08 | $4.00 | $4.81 | $7.62 | $0.81 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $57.47 |

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|--------------|------------------|----------------------|----------------------------------------|------|-----|-----|-------|
| $41.90 | $4.00 | $5.03 | $7.97 | $0.84 | $0.05 | $0.05 | $0.03 | $0.02 |
| | | | | | | | | Package Rate $59.89 |

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

47

SCHEDULE B
Painters
Wage Rates effective
May 1, 2006 through April 30, 2007
Work Classification, 6.1 (D) Industrial Repaint

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $26.49 | $4.00 | $3.18 | $5.04 | $0.53 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $39.39

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $29.14 | $4.00 | $3.50 | $5.54 | $0.59 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $42.92

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $30.47 | $4.00 | $3.66 | $5.79 | $0.61 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $44.68



Deducted from Member
Administration Dues        5% of Gross Wage
PAC                        $0.10 per hour
Vacation Fund              $1.00 per hour

48





### SCHEDULE B
Painters
Wage Rates effective
May 1, 2006 through April 30, 2007
**Work Classification, 6.2 (D) Industrial Repaint**

#### Journeyman

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $29.14 | $4.00 | $3.50 | $5.54 | $0.59 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $42.92

#### Foreman

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $32.06 | $4.00 | $3.85 | $6.10 | $0.65 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $46.81

#### General Foreman

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Education & Training 2% | LMCI | FTI | IAF | Stars |
|------|------|------|------|------|------|------|------|------|
| $33.52 | $4.00 | $4.03 | $6.37 | $0.67 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $48.74

Deducted from Member

| | |
|------|------|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

49

### SCHEDULE E
### Bridge Painters
### Wage Rates effective
### May 1, 2006 through April 30, 2007
### Work Classification, Bridge

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Journeyman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $37.50 | $4.00 | $4.50 | $7.13 | $0.75 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $54.03

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $40.20 | $4.00 | $4.83 | $7.64 | $0.81 | $0.05 | $0.05 | $0.03 | $0.02 |

Package Rate $57.63

| Wage | Pension Fund | Annuity Fund 12% | Health & Welfare 19% | General Foreman Education & Training 2% | LMCI | FTI | IAF | Stars |
|---|---|---|---|---|---|---|---|---|
| $43.10 | $4.00 | $5.18 | $8.19 | $0.87 | $0.05 | $0.05 | $0.03 | $0.03 |

Package Rate $61.47

Deducted from Member

| | |
|---|---|
| Administration Dues | 5% of Gross Wage |
| PAC | $0.10 per hour |
| Vacation Fund | $1.00 per hour |

50



IN WITNESS WHEREOF the parties hereto set their hand and seals the day and year and period extended by Article 20.2

Effective:   May 1, 2006    To:   March 31, 2011

    The undersigned, an Employer in the Painting and Paperhanging industry and all work being performed as outlined in Article 2, have read the foregoing Agreement, familiar with its provisions, accept and agree to be bound by all its terms and conditions set forth in this Agreement.

    At the commencement of each contract or upon beginning of work within the territory during each contract year, each Employer shall pay to the Joint Trade Board the sum of Fifty dollars ($50.00). (See Article 17.9)

Business name _____

Business address _____  State _____  Zip code _____

Phone # _____  Fax # _____

Federal ID # _____

Workmen Compensation Insurance Co. and Policy # _____

Unemployment Compensation Commission (U.C.C. #) _____

Temporary Disability Benefits Insurance (T.D.B. #) _____

Signed _____  day of _____ , 20 ____

Employers Signature & Title _____

Printed name of Employer _____

For the Union
Patrick J. Brennan, Business Manager/Secretary Treasurer of District Council 711
International Union of Painters and Allied Trades, State of New Jersey
The original (completed) form MUST BE MAILED to District Council 711
2116 Ocean Heights Ave.
EHT, NJ 08234

EMPLOYER COPY

B04148     DC71)

Renewal

The Employer hereby recognizes Painters District Council 711 ("the Union") as the sole and exclusive bargaining agent, within the meaning of Section 9 (a) of the National Labor Relations Act ("the Act"), of all employees of the Employer covered under the attached Collective Bargaining Agreement, such recognition is predicated on the Union's demand for such recognition pursuant to Section 9 (a) of the Act, and on the Union's presentation of a clear showing that the majority of employees in the bargaining unit are the members of the Union and desire the Union to act as their exclusive representative within the meaning Section 9 (a) of the Act. The Employer acknowledges that it has reviewed the Union's showing and agrees that it reflects the employees' desire to be represented by the Union under Section 9 (a) of the Act.

IN WITNESS WHEREOF the parties hereto set their hand and seals the day and year and period extended by Article 20.2

From: May 1, 2006 to: April 30, 2011

The undersigned, an Employer in the Drywall industry and all work being performed as outlined in Article 2, have read the foregoing Agreement, familiar with its provisions, accept and agree to be bound by all its terms and conditions set forth in this Agreement.

At the commencement of each contract or upon beginning of work within the territory during each contract year, each Employer shall pay to the Joint Trade Board the sum of Fifty dollars ($50.00).
(See Article 17.9)

BUILT RIGHT CONSTRUCTION, INC w/o/k
Business name

387 PASSAIC AVE FAIRFIELD NJ 07004
Business address

Phone # 973-439-1199   Fax # 973-439-1130

04-3710598
Federal ID#

LIBERTY MUTUAL   WC7-335-339299-026
Workmen Compensation Insurance Co. and Policy #

GN 1560
Unemployment Compensation Commission (U.C.C. #)

TRENTON
Temporary Disability Benefits Insurance (T.D.B. #)

Signed  04  day of OCTOBER  2006

Employers Signature & Title

Printed name of Employer RIZEK KHALIFEH - VICE-PRESIDENT

For the Union
Patrick J. Brennan, Business Manager/Secretary Treasurer of District Council 711
International Union of Painters and Allied Trades, State of New Jersey

The original (completed) form MUST BE MAILED to District Council 711
2116 Ocean Heights Ave.
EHT     NJ     08324

Union Copy