## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
)
                   Plaintiff, )      CIVIL ACTION NO.
    v. )      1:08-cv-00465
)
BUILT RIGHT CONSTRUCTION, INC. )
    d/b/a Built Right Construction Inc )
    d/b/a Built Right, Inc. )
    d/b/a Built Right Construction (Drywall )
       Contractor) )
)
VINCENT PAINO a/k/a Vince Paino, individually )
    and d/b/a Built Right Construction, Inc., )
    d/b/a Built Right Construction Inc )
    d/b/a Built Right, Inc. )
    d/b/a Built Right Construction (Drywall )
       Contractor) )
)
RIZEK KHALIFEH, individually and )
    d/b/a Built Right Construction, Inc., )
    d/b/a Built Right Construction Inc )
    d/b/a Built Right, Inc. )
    d/b/a Built Right Construction (Drywall )
       Contractor) )
)
              Defendants. )

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT AS TO
## BUILT RIGHT CONSTRUCTION, INC. AND RIZEK KHALIFEH

Plaintiff, International Painters and Allied Trades Industry Pension Fund, respectfully

moves this Court for entry of judgment by default against Defendants, Built Right Construction,

Inc., d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction

(Drywall Contractor), and Rizek Khalifeh, individually and d/b/a Built Right Construction, Inc.,

d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction

(Drywall Contractor) ("Company" or "Defendants") in the amount of $68,401.62. On April 30,

2008, Plaintiff filed with the Clerk of the Court a Request to Enter Default against Defendants

Built Right Construction, Inc., and Rizek Khalifeh, pursuant to Federal Rule of Civil Procedure 55(a). Defaults were subsequently entered on May 1, 2008.

Accompanying this motion are a supporting memorandum of points and authorities, the Declaration of Thomas C. Montemore (attached as Exhibit 1), the Declaration of Dawn M. Costa (attached as Exhibit 2), itemization of attorneys' costs and fees (attached as Exhibit 3), Altman Weil Survey of Law Firm Economics (attached as Exhibit 4), The 2004 Economics of Law Practice in Ohio Survey (attached as Exhibit 5) and a proposed default judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:/s/ Kent G. Cprek
KENT G. CPREK, ESQUIRE (I.D. #478231)
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0615
Attorney for Plaintiff

Date: June 5, 2008

OF COUNSEL:
Dawn M. Costa, Esquire
Jennings Sigmond P.C.
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0616

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00465 |
| BUILT RIGHT CONSTRUCTION, INC.<br>    d/b/a Built Right Construction Inc<br>    d/b/a Built Right, Inc.<br>    d/b/a Built Right Construction (Drywall<br>        Contractor) | ) ) ) ) ) ) | |
| VINCENT PAINO a/k/a Vince Paino, individually<br>    and d/b/a Built Right Construction, Inc.,<br>    d/b/a Built Right Construction Inc<br>    d/b/a Built Right, Inc.<br>    d/b/a Built Right Construction (Drywall<br>        Contractor) | ) ) ) ) ) ) | |
| RIZEK KHALIFEH, individually and<br>    d/b/a Built Right Construction, Inc.,<br>    d/b/a Built Right Construction Inc<br>    d/b/a Built Right, Inc.<br>    d/b/a Built Right Construction (Drywall<br>        Contractor) | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the "Pension Fund"), is entitled to an Order entering judgment by default against Defendants, Built Right Construction, Inc., d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction (Drywall Contractor), and Rizek Khalifeh, individually and d/b/a Built Right Construction, Inc., d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction (Drywall Contractor) ("Company" or "Defendants"), in the amount of $68,401.62.

The Pension Fund served its Complaint on defendants Built Right Construction, Inc., and Rizek Khalifeh on April 9, 2008. To date, Defendants have failed to answer the Complaint or to otherwise defend this action. Plaintiff filed a Request to Clerk to Enter Default as to the defendants Built Right Construction, Inc., and Rizek Khalifeh, pursuant to Fed. R. Civ. P. 55(a) on April 30, 2008. Default was entered against these Defendants on May 1, 2008. A Suggestion of Death Upon the Record as to Vincent Paino was filed on May 21, 2008. Plaintiff now submits its motion for entry of judgment by default as to defendants Built Right Construction, Inc., and Rizek Khalifeh.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise defend, the Pension Fund is entitled to judgment by default against Defendants without a hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, such as those here, fail to respond to the Complaint, all factual allegations in the Complaint are deemed admitted. Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978) (allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent conveyance or voidable preference).

Company is and has been party to collective bargaining agreements (singly or jointly "Labor Contract") with the various local unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"), including Local Union No. 711 ("Local 711"). Under the Labor Contract, Company is required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore

Declaration, ¶¶ 5, 6.  The failure to pay these fringe benefit contributions and other amounts results in a delinquency to the Plaintiff.  Id.

## ARGUMENT

A.    **ENTRY OF JUDGMENT AGAINST DEFENDANT FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE**

      1.    **Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶ 5.  Under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement", attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 3 to the Complaint filed in this matter and incorporated by reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 14-15; Exhibit 1, Montemore Declaration, ¶¶ 5, 6. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees who perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶ 6.  Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Id. Under the Trust Agreement, the Pension Fund has the right to audit the signatory's payroll books and related records to determine that all of the required contributions have been paid. See, Trust Agreement, Art. VI, Sec. 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall ... make contributions in accordance
> with ... such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

    A.    the unpaid contributions;

    B.    interest on the unpaid contributions;[1]

    C.    an amount equal to the greater of:

        (i)    interest on the unpaid contributions; or

        (ii)    liquidated damages provided for under the plan in an
                amount not in excess of 20 percent (or such higher
                percentage as may be permitted under Federal or State law)
                of the amount determined by the Court under subparagraph
                (a);[2]

    D.    reasonable attorneys' fees and costs of the action, to be paid by the
        defendant; and

    E.    such other legal or equitable relief as the court deems appropriate.

As stated above, Defendant has failed to submit contributions for the period mid-

September 2006 through January 21, 2007, and May 1, 2007 through April 30, 2008. See,

---

[1]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

[2]    ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

Exhibit 1, Montemore Declaration, ¶ 7. As a result, Plaintiff is entitled to judgment in at least the amount of $68,401.62.

### a. Defendants owes unpaid benefit contributions in the amount of $44,161.16.

4.        Defendants owe the Pension Fund at least $44,161.16 in contributions for the period mid-September 2006 through January 21, 2007, and May 1, 2007 through April 30, 2008. This amount includes estimates for the period December 2007 through April 2007, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund.  For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants.  The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Using this methodology, the Pension Fund has calculated the amount due for December 2007 through April 2008 as follows:

| MONTH | AMOUNT |
|---|---|
| September 2007 | $   1,353.60 |
| October 2007 | $   4,762.80 |
| November 2007 | $   3,671.40 |
| TOTAL | $   9,787.80 |

$9,787.80 divided by three equals $3,262.61, which is used as the estimated contribution amount for the period December 2007 through April 2008. See, Montemore Declaration, ¶ 7.

### b. Defendant owes interest through May 31, 2008, in the amount of $2,221.00.

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 3 to the Complaint filed in this matter and incorporated by reference) sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes.  Interest accruing through May 31, 2008, on Defendant's unpaid contributions totals $2,221.00.  Interest shall continue to accrue on unpaid contributions in accordance with the

Plan and ERISA until the date of actual payment. Montemore Declaration, ¶ 10; 29 U.S.C. §

1132(g)(2); 26 U.S.C. § 6621.

### c. Defendant owes liquidated damages on unpaid contributions in the amount of $8,832.23.

ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated

damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions

due at the commencement of the lawsuit and those which become delinquent during the course

of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement (attached as Exhibit 2

to the Complaint filed in this matter and incorporated by reference) also provides for the

assessment of liquidated damages on contributions delinquent more than 20 days. As indicated

above, Defendant owes $44,161.16 in unpaid contributions. Twenty percent (20%) of this

amount is $8,832.23. The total amount of liquidated damages is greater than the interest due.

Therefore, Defendant owes liquidated damages in the amount of $8,832.23. See, Montemore

Declaration, ¶ 11; 29 U.S.C. § 1132(g)(2)(C).

### d. Defendant owes attorneys' fees and costs in the amount of $8,337.95.

Plaintiff has incurred $4,112.00 in attorneys' fees and costs in connection with this matter

through June 4, 2008. See, Exhibit 2, Costa Declaration, ¶ 2; Exhibit 3. See, 29 U.S.C. §

1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it

incurs in connection with the enforcement and collection of any judgment entered by the Court.

See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972

(3d Cir. 2003); Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and

Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989).

    **e.  Defendant owes late charges on untimely paid contributions in the amount of $1,143.59.**

ERISA and § 10.12 of the Plan allow other legal or equitable relief as the Court deems

appropriate.  Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides

for "late charges" in the form of interest on contributions paid more than twenty days after the

due date and prior to litigation.   Defendant owes $1,143.59 in late charges for the period of July

2006 through mid-September 2006, and February 2007 through August 2007.  See, Montemore

Declaration, ¶ 8.  See also, International Brotherhood of Painters and Allied Trades International

Union and Industry Pension Fund v. Claser Painting Corporation, No. 91-7185, slip. op. at *1-2

(D.C. Cir. Feb. 1, 1993).

    **f.  Defendant owes liquidated damages on untimely paid contributions in the amount of $3,705.69.**

ERISA and § 10.12 of the Plan allow other legal or equitable relief as the Court deems

appropriate.  Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides

for liquidated damages on contributions paid more than twenty days after the due date and prior

to litigation.   Defendant owes $3,705.69 in liquidated damages for the period of July 2006

through mid-September 2006, and February 2007 through August 2007.  See, Montemore

Declaration, ¶ 9.

    **2.     The Pension Fund is entitled to injunctive relief**

The failure of Defendant to comply with its contractual and statutory obligations results in

a substantial adverse impact on the Pension Fund's ability to meet its legal obligations.  See,

Montemore Declaration, ¶ 13.  The Pension Fund is obligated by the express mandates of ERISA

and by the documents and instruments by which it is administered to provide benefits and

pension credits to all of Company's employees who are otherwise eligible to receive them.  Id;

29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether the employer makes the contributions. See, Montemore Declaration, ¶ 12. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources. Id.

Additionally, where, as here, Defendant fails to remit its contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Id. This loss of investment income combined with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) affects the actuarial soundness of the Pension Fund as well as depletes the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendant's failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendant's failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendant's malfeasance causes the Pension Fund, the

Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

## CONCLUSION

Plaintiff, thus, requests that the Court enter a judgment against Defendants, Built Right Construction, Inc., and Rizek Khalifeh ("Company" or "Defendants") in the amount of $68,401.62 and, in light of the clear statutory intent of ERISA, it is further requested that this Court grant the Pension Fund all other relief to which it may be entitled under applicable law and as requested in the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
    KENT G. CPREK (BAR NO. 478231)
    510 Walnut Street, 16th Floor
    Philadelphia, PA 19106-3683
    (215) 351-0615
    Counsel for Plaintiff

DATE: 6/5/2008

OF COUNSEL:
Dawn M. Costa, Esquire
Jennings Sigmond P.C.
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0616

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00465 |
| BUILT RIGHT CONSTRUCTION, INC., et al. | ) ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this 5th day of June 2008, that I caused to be served a copy of the

foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in

Support thereof, Declaration of Thomas C. Montemore, Declaration of Dawn M. Costa,

itemization of attorney fees, Altman Weil Survey of Law Firm Economics, The 2004 Economics

of Law Practice in Ohio Survey and proposed Default Judgment by sending a copy of same via

U.S. Mail, postage-prepaid to:

Built Right Construction, Inc.
387 Passaic Avenue
Fairfield, NJ 08093

Rizek Khalifeh
24 Willet Street
Bloomfield, NJ 07002

/s/    Kent G. Cprek
KENT G. CPREK, ESQUIRE

Date: 6/5/2008

196262
PTINTF-29592

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00465 |
| BUILT RIGHT CONSTRUCTION, INC. d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) | ) ) ) ) ) ) | |
| VINCENT PAINO a/k/a Vince Paino, individually and d/b/a Built Right Construction, Inc., d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) | ) ) ) ) ) ) ) | |
| RIZEK KHALIFEH, individually and d/b/a Built Right Construction, Inc., d/b/a Built Right Construction Inc d/b/a Built Right, Inc. d/b/a Built Right Construction (Drywall Contractor) | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFAULT JUDGMENT AS TO**
**BUILT RIGHT CONSTRUCTION, INC., AND RIZEK KHALIFEH**

Upon consideration of the Complaint and Motion for Entry of Judgment by Default of the

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund," "Pension

Fund" or "Plaintiff"), it appears to the Court that Defendants, Built Right Construction, Inc.,

d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction

(Drywall Contractor), and Rizek Khalifeh, individually and d/b/a Built Right Construction, Inc.,

d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction

(Drywall Contractor), ("Company" or "Defendants"), has willfully failed to appear, plead or otherwise defend, and it is **ORDERED**:

1.    Plaintiff's Motion is **GRANTED**;

2.    Judgment is entered against Company and in favor of Plaintiff in the total amount of $68,401.62 itemized as follows:

(a)    Unpaid contributions for the period of mid-September 2006 through January 2007, and May 2007 through April 2008 in the amount of $44,161.16 under 29 U.S.C. § 1132(g)(2);

(b)    Late charges on late-paid contributions for the period July 2006 through mid-September 2006, and February 2007 through August 2007 in the amount of $1,143.59;

(c)    Liquidated damages on late-paid contributions for the period July 2006 through mid-September 2006, and February 2007 through August 2007 in the amount of $3,705.69;

(c)    Interest on unpaid contributions from the date contributions became due through May 31, 2008, in the amount of $2,221.00;

(d)    Liquidated damages on unpaid contributions in the amount of $8,832.23. As indicated above, Defendants owes $44,161.16 in unpaid contributions. Defendant owes liquidated damages totaling twenty percent (20%) of the unpaid contributions. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $8,832.23.

(e)    Attorneys' fees and costs in the amount of $8,337.95 incurred by Plaintiff through June 3, 2008, as provided in 29 U.S.C. § 1132(g)(2)(D).

3.    Company, its owners, officers, agents, servants, attorneys and all persons acting on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from

refusing to file complete, proper and timely remittance reports with accompanying pension contributions for all periods for which Defendant is obligated to do so under its collective bargaining agreement(s).

4.     If further action by the Pension Fund is required to obtain payment of the amounts owed by Defendant, it may apply to this Court or to the court in which enforcement is sought, for such further reasonable attorneys' fees and costs in addition to those set out in Paragraph 2(d) above. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

5.     Within ten (10) days of the entry of this Order, Defendant shall fully and accurately complete and submit to the Plaintiff any and all outstanding remittance reports through May 31, 2008, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

6.     If additional delinquencies are discovered pursuant to the submission of the remittance reports or to an audit, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) together with any audit costs incurred by the Plaintiff.

9.     Plaintiff is awarded reimbursement of all additional attorneys' fees and costs it incurs in the collection and enforcement of this judgment as well as those incurred in the

collection of delinquent contributions which may be found to be due as a result of the audit provided for in this Order.

      10.    If Defendant fails to comply with any of the terms of this Order, the Plaintiff may, in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69, reopen this case upon motion to the Court and notice to the Defendant, and may at that time ask for further appropriate monetary and/or injunctive relief.

 

 

_____
The Honorable Henry H. Kennedy
United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Kent G. Cprek, Esquire
Jennings Sigmond, P.C.
510 Walnut Street, 15th Floor
Philadelphia, PA 19106-3683

Built Right Construction, Inc.
387 Passaic Avenue
Fairfield, NJ 08093

Rizek Khalifeh
24 Willet Street
Bloomfield, NJ 07002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED     )
TRADES INDUSTRY PENSION FUND          )
                                      )
                    Plaintiff,        )     CIVIL ACTION NO.
          v.                          )     1:08-cv-00465
                                      )
BUILT RIGHT CONSTRUCTION, INC., et al. )
                                      )
                    Defendants.       )

## DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.    My name is Thomas C. Montemore and I am the Assistant to the Fund

Administrator of the International Painters and Allied Trades Union and Industry Pension Fund

("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I

served as Delinquency Controller from 1988 through October 31, 2000, and I have served as the

Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from

1982 to 1986, and File Clerk beginning in 1979.

2.    The Pension Fund is an "employee benefit pension plan" as defined in Section

3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union

of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry

whose employees are members of or otherwise represented by the Union and its district councils

and local unions, for the purpose of providing retirement income to the employees. The Pension

Fund is administered in the District of Columbia from its and my principal place of business at

1750 New York Avenue, N.W., Washington, D.C. 20006.



3.     I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.     The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.     My review of the regular business records maintained by the Pension Fund reveals that the Defendant, Built Right Construction, Inc., d/b/a Built Right Construction Inc, d/b/a Built Right, Inc., d/b/a Built Right Construction (Drywall Contractor), et al. ("Company" or "Defendant"), was a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC. Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan.

6.     The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.    Based upon information currently available to the Pension Fund, Defendant

presently owes the Pension Fund contributions for the for the period of mid-September 2006

through January 21, 2007, and May 1, 2007 through April 30, 2008 in the amount of at least

$44,161.16. This amount includes estimates for the period December 2007 through April 2008,

a period for which Defendant has failed to submit both contributions and remittance reports to

the Pension Fund. For the period in which the Pension Fund has not received remittance reports

and corresponding contributions, the Pension Fund is forced to estimate an amount due from

Defendants. The estimate is reached by averaging the three months of contributions prior to the

first month in which no report is received. Using this methodology, the Pension Fund has

calculated the amount due for December 2007 through April 2008 as follows:

| MONTH | AMOUNT |
|---|---|
| September 2007 | $    1,353.60 |
| October 2007 | $    4,762.80 |
| November 2007 | $    3,671.40 |
| TOTAL | $    9,787.80 |

$9,787.80 divided by three equals $3,262.60, which is used as the estimated contribution amount

for the period December 2007 through April 2008.

8.    Defendants owe late charges in the amount of $1,143.59. ERISA and §10.12 of

the Plan allow other legal or equitable relief as the Court deems appropriate. Article VI, § 4 of

the Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form

of interest on contributions paid more than twenty days after the due date and prior to litigation.

Defendants owe $1,143.59 in late charges for the period of July 2006 through part of September

2006, and February 2007 through August 2007.

9.    Defendants owe liquidated damages in the amount of $3,705.69 in for untimely

paid contributions. Article VI, § 4 of the Trust Agreement, permits the assessment of liquidated

damages or penalties on delinquencies paid more than twenty days after the due date. For the periods July 2006 through part of September 2006, and February 2007 through August 2007, Defendant made payments more than twenty days after the due date totaling $18,528.42. Therefore, Defendant owes liquidated damages on late-paid contributions in the amount of $3,705.69.

10.     Defendants owe interest through May 31, 2008, in the amount of $2,221.00 on the unpaid pension contributions set forth in ¶ 7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

11.     Defendants owe liquidated damages totaling $8,832.23 on the unpaid pension contributions set forth in ¶ 7. Section 10 of the Plan, related to unpaid pension contributions, parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through May 31, 2008, is $2,221.00. Twenty percent (20%) of Defendants' total unpaid contributions is $8,832.23. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages on unpaid contributions in the amount of $8,832.23.

12.     The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries,

time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

13.     Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions and the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their

contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. pay stubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

14.    I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: _6/5/08_

_Thomas Montemore_
THOMAS MONTEMORE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00465 |
| BUILT RIGHT CONSTRUCTION, INC., *et al* | ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF DAWN M. COSTA, ESQUIRE

DAWN M. COSTA states:

1.      I am an associate with the law firm of Jennings Sigmond, P.C. with responsibility

for the case captioned <u>International Painters and Allied Trades Industry Pension Fund v. Built</u>

<u>Right Construction, Inc., *et al*</u>, Civil Action No. 1:08-cv-00465.  I submit this declaration to

support an award of attorney fees to Plaintiff.

<u>Case Fees</u>

2.      Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a

list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in

connection with this action through June 6, 2008.  The listing was prepared from

contemporaneous attorney time and expenses records and bills, the originals of which are

maintained in the regular business records of Jennings Sigmond. Each piece of work is

separately coded and the work performed is described.  The fees relevant to this case are

$7,194.00 and expenses are $1,143.95 for a total of $8,337.95.

3.      The identity of those performing services related to this matter and normal hourly

rates are as follows.



| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| KGC | Kent G. Cprek | Shareholder | $220.00 |
| SMC | Shanna M. Cramer | Associate | $220.00 |
| DMC | Dawn M. Costa | Associate | $220.00 |

4.    Plaintiffs only seek judgment for fees in the bills, which reflect a special fee schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform $220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.    Kent Cprek. Kent Cprek is a shareholder in Jennings Sigmond, P.C. and a co-leader in its ERISA Practice and have practiced law for 28 years. He was admitted to the State Bar of Michigan in November 1978, the bar of the Supreme Court of Pennsylvania in May 1984 and the District of Columbia Bar in 2002. He began practice with the firm of Marston, Sachs, Nunn, Kates, Kadushin and O'Hare, P.C., Detroit, Michigan, 48226, in the representation of plan participants, multiemployer funds and labor unions from 1978 to 1981. From 1981 to 1984, he was employed by the Pension Benefit Guaranty Corporation as an attorney with responsibility for advice and litigation concerning termination of pension plans. He joined Sagot, Jennings & Sigmond, a predecessor to Jennings Sigmond, P.C. in 1984. He has a J.D. cum laude from the University of Michigan Law School and a Master of Laws in Taxation from the Georgetown University Law Center. He is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the District of Columbia Circuit, Third Circuit, Fourth Circuit, Fifth Circuit and Sixth Circuit and the United States District Courts for the District of Columbia, Eastern and Middle Districts of Pennsylvania and the Eastern and Western Districts of Michigan.

Since 1981, his work has been concentrated in the representation of employee benefit plans. His litigation experience includes representation of multiemployer plans and participants for more than twenty years, with trials of a number of actions and arbitrations and significant appellate work involving all aspects of withdrawal liability and pension law. A sample of his litigation experience is available in 53 published cases that be obtained through a Westlaw search for "AT (Cprek)" in the FPENS-CS library.

He has taught on the subject of Collections and Bankruptcy work for employee benefit plans for the International Foundation of Employee Benefit Plans.

Cprek, "Bankruptcy Basics," Attorney Pre-Conference Sessions, Annual Educational Conference, International Foundation of Employee Benefit Plans (1998)

Cprek, "Bankruptcy Basics," Attorney Sessions, Trustee and Benefit Professionals Institute, International Foundation of Employee Benefit Plans (1991)

Cprek, "Bankruptcy Collections by Employee Benefit Plans," Collection Procedures Institute, International Foundation of Employee Benefit Plans (1990)

Cprek, "Collecting from the Bankrupt Employer," Collections Procedures Institute, International Foundation of Employee Benefit Plans (April 1986)

Cprek, "Duties of Trustees in the Collection Process: The Law Today," reprinted in Employee Benefits Annual 1986: Proceedings of the Annual Employee Benefits Conference, p. 16 (IFEBP 1987).

Panelist, Seminar on Multiemployer Pension Plan Amendments Act, Pennsylvania Bar Institute (Fall 1987)

His later work has focused on benefit plan mergers and a continuing treatise on termination of single-employer pension plans. Cprek, "Single Employer Pension Plan Terminations," Schneider & Freedman (Eds.), ERISA: A Comprehensive Guide, (2d Ed. Aspen 2003).

6.    Shanna M. Cramer. Shanna M. Cramer, an associate in the firm, has actively practiced law for three (4) years. She graduated in 1997 from Rutgers University, with honors, with a Bachelors Degree in History, Political Science and Spanish. She received her law degree in 2001 from Rutgers Law School. Ms. Cramer graduated in 2004 from Beasley School of Law-Temple University, with an LL.M in Taxation. Ms. Cramer has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

7.    Dawn M. Costa. Dawn M. Costa, an associate in the firm, has practiced law for five (5) years. She graduated with high honors in 1999 from Rutgers University, with a Bachelor of Science Degree in Psychology and Administration of Justice. Ms. Costa received her law degree in 2002 from Rutgers Law School and subsequently served as a law clerk in the Superior Court of New Jersey. Ms. Costa is admitted to the Bars of Pennsylvania and New Jersey, and is admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

<u>Legal Market Benchmark</u>

8.      The time and fees charged in this case are reasonable based on prevailing market

rates for similar services by lawyers of reasonably comparable skill, experience and reputation in

both the Philadelphia and District of Columbia markets.

9.      My opinion that the time and fees are reasonable is based on a number of factors,

including the following.

(a)      We serve as counsel or co-counsel to over 20 multiemployer employee benefit

funds groups.  The firm currently has 16 lawyers, with a dedicated benefits department of eight

(8) lawyers.  The work is specialized and our competition often is large corporate firms with both

employee benefits and federal litigation experience.  In my experience, our fees are normally

substantially lower than the charges of larger firms.

(b)      The flat rate in this case is consistent with market rates in published surveys

by Altman Weil, a leading law firm consultant. Specifically, Altman Weil found a median

hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both

Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th

percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from

http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4. The

median rate for partners (shareholders) in employee benefits litigation was $305 per hour,

*id.*, Practice Specialties and Hourly Rates (October 1, 2005).  A $220 rate in 2008 is only a

12.82% increase over the 2005 median for associates only.

(c)      The fees are consistent with market ranges in a 2004 Ohio bar association

survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20

of%20Law.pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after

giving weight to increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region covering Ohio ($180)). The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $334 - $359 at the 90th percentile. See, Exhibit 5 (excerpt page 26). It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit 5 (Ex. 27).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed on: 6/5/2008                       /s/ Dawn M. Costa
                                          DAWN M. COSTA, ESQUIRE
                                          Jennings Sigmond P.C.
                                          510 Walnut Street, 16th Floor
                                          Philadelphia, PA 19106-3683
                                          (215) 351-0616
                                          Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED          )
TRADES INDUSTRY PENSION FUND               )
                                           )
                  Plaintiff,    )    CIVIL ACTION NO.
    v.                                     )    1:08-cv-00465
                                           )
BUILT RIGHT CONSTRUCTION, INC., *et al*    )
                                           )
             Defendants.      )

## JENNINGS SIGMOND ATTORNEYS' FEES – June 1, 2008 – June 4, 2008

Kent G. Cprek               KGC
Shanna M. Cramer        SMC
Dawn M. Costa           DMC

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 6/4/2008 | DMC | Review and Revision of Declaration of Thomas Montemore; Review and Revision of Form of Judgment; Review and Revision of Motion for Entry of Judgment by Default; Review and Revision of Memorandum of Points and Authorities; Review and Revision of Costa Declaration; Preparation of Itemization of Attorney's Fees; Legal Research; Telephone Conference with Client | 5.0 |

                                                **TOTAL:**     **5.0**

**June 2008 Summary**
DMC   5.0 hours x $220.00    = $ 1,100.00
Attorneys' Fees through 5/31/08  = $ 6,094.00
Costs                       = $ 1,143.95

     **Grand Total:**     **$ 8,337.95**


EXHIBIT 3

Report ID:  OT2025 - 18475
Thursday, June 05, 2008

# Jennings Sigmond, P.C.
## Time And Expense Details

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| OINTF | IUPAT Industry Pension Fund | 29592 | Built Right, Inc. | Sigmond, Richard B. |

Beginning To End

### Billed Time

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 5/2/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence (2x) |
| 5/3/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence (2x) |
| 5/5/2008 | DMC | 1.80 | 1.80 | 220.00 | $396.00 | | | Preparation of Initial Draft of Motion for Entry of Judgment by Default |
| 5/6/2008 | DMC | 3.80 | 3.80 | 220.00 | $836.00 | | | Office Conference regarding Amending Complaint; Preparation of Correspondence to Client; Preparation of Correspondence to Client; Review of Correspondence (4x); Phone Conference with Passaic County Surrogate's Office; Preparation of Correspondence to Client; Preparation of Motion to Amend |
| 5/8/2008 | DMC | 0.40 | 0.40 | 220.00 | $88.00 | | | Preparation of Memorandum of Law; Preparation of Proposed Form of Order; Phone Conference with Surrogates Court; Preparation of Correspondence to Surrogates Court |
| 5/9/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review and Revision of  Letter to Passaic County Surrogate; Memo to File |
| 5/21/2008 | KGC | 0.10 | 0.10 | 220.00 | $22.00 | | | Office Conference re: deceased owner claims |
| 5/21/2008 | DMC | 4.90 | 4.90 | 220.00 | $1,078.00 | | | Phone Conference with County Surrogate's Office; Legal Research; Investigate Death of Paino; Property Search on Paino; Preparation of Suggestion of Death; Electronic Filing of Suggestion of Death; Review of Correspondence |
| 5/22/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Preparation of Draft of Montemore Declaration |
| 5/23/2008 | DMC | 2.10 | 2.10 | 220.00 | $462.00 | | | Preparation of Draft of Memorandum of Points & Authorities; Preparation of Draft of Motion for Judgment by Default |
| 5/28/2008 | DMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Preparation of Correspondence to Client; Memo to File; Review of Correspondence |

### Unbilled Time

| | Totals | 13.70 | 13.70 | | $3,014.00 | | | |
|---|---|---|---|---|---|---|---|---|

### Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 5/9/2008 | $125.00 | 7100 | Service Fee |
| 5/9/2008 | $95.00 | 7100 | Service Fee |
| 5/9/2008 | $10.00 | 7100 | Search for Estate of Vincent Paino |
| 5/15/2008 | $95.00 | 7100 | Service of Process |

Report ID:   OT2025 - 18475
Thursday, June 05, 2008

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

Printed By   SLG
Page   2

Unbilled Expenses Totals     $325.00

| Billed Time Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 2/6/2008 | SMC | 0.40 | 0.40 | 220.00 | $88.00 | | | Review of Documents Open File |
| 2/7/2008 | SMC | 2.00 | 2.00 | 220.00 | $440.00 | | | Review of Documents Preparation of Complaint |
| 2/8/2008 | DMC | 0.50 | 0.50 | 220.00 | $110.00 | | | Left voice mail message for B. Last, Esquire Review of Correspondence Phone Conference with Attorney B. Last Preparation of Memo to File |
| 2/20/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Preparation of Correspondence to T. Montemore |
| 2/21/2008 | DMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Review of Correspondence Preparation of Correspondence to T. Montemore and P. Gilbert |
| 3/4/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence |
| 3/7/2008 | DMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Review of Correspondence Review of Client Message Preparation of Memo to File |
| 3/11/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Preparation of Correspondence to Client Review of Correspondence |
| 3/12/2008 | DMC | 2.50 | 2.50 | 220.00 | $550.00 | | | Review and Revision of Complaint Request and Review Updated Corporate Status Request and Review D & B Report Preparation of Correspondence to Client |
| 3/13/2008 | DMC | 3.80 | 3.80 | 220.00 | $836.00 | | | Review of Correspondence Computer Research and Legal Research on Liability of Officers after Dissolution of Corporation Review and Revision of Complaint |
| 3/13/2008 | KGC | 1.40 | 1.40 | 220.00 | $308.00 | | | Legal Research regarding NJ Corporation Liability Review and Revision of Complaint and Memo regarding same |
| 3/17/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence Preparation of Correspondence to Client |
| 3/19/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Notices from Court |
| 3/25/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review and Revision of Correspondence |
| 3/26/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Memo to File |
| 4/4/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence |
| 4/23/2008 | DMC | 0.30 | 0.30 | 220.00 | $66.00 | | | Phone Conference with Process Server Memo to File |
| 4/25/2008 | DMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Preparation of Correspondence to Client Review of Correspondence Memo to File |

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|------|-----------|-------------|--------------|------|--------|------|----------|-----------|
| 4/30/2008 | DMC | 1.70 | 1.70 | 220.00 | $374.00 | | | Review of Docket; Preparation of Request to Enter Default; Preparation of Declaration; Preparation of Affidavit of Non-Military Service; Legal Research |

**Billed Time**

| | | Hours Worked | Hours On Bill | | Amount |
|---|---|---|---|---|---|
| Totals | | 14.00 | 14.00 | | $3,080.00 |

**Billed Expenses**

| Date | Amount | Exp Code | Narrative |
|------|--------|----------|-----------|
| 3/13/2008 | $350.00 | 7100 | US District Court - Filing Fee |
| 3/22/2008 | $14.38 | SD | Special Delivery |
| 4/1/2008 | $97.90 | CRDB | Computer Research - Dun & Bradstreet |
| 4/1/2008 | $356.67 | CRWL | Computer Research - Westlaw |

**Billed Expenses**

| | |
|---|---|
| Totals | $818.95 |

**Report Totals**

| Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|-------------|---------------|-----------|----------------|-------------|
| 27.70 | 27.70 | $6,094.00 | $1,143.95 | $7,237.95 |

*** End Of Report ***

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

### Establishing the

### International Painters and Allied Trades

### Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employer" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3



be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I.

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1*    AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2*.    PENSION FUND   The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

*Section 3.*    PENSION PLAN. The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof. The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.*    ANNUITY PLAN. The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof. The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.*    TRUSTEES.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)    The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees. Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.*    UNION. The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

36479-3

Section 7.     CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

Section 8.     COLLECTIVE BARGAINING AGREEMENT.     The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

Section 9.     EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

*Section 10*    EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue , whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

## ARTICLE II

## GENERAL

*Section 1.*    ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

36479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees

for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

    *Section 2.*    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for

the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further

provide the means for financing the expenses of the Trustees and the operation and administration of

the Fund, in accordance with this Agreement and Declaration of Trust.

# ARTICLE III

# UNITED STATES TRUSTEES

    *Section 1.*    JOINT ADMINISTRATION.  The operation and administration of the

Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the

Trustees appointed by the Union.

    *Section 2.*    ACCEPTANCE OF TRUSTEESHIP.  The Trustees, by affixing their

signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and

act in their capacities strictly in accordance with the provisions thereof. Each additional or successor

Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be

deemed to have accepted the Trust created and established by this instrument and to have consented

to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written

acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the

receipt of such acceptance.

    *Section 3.*    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until

his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

as hereinafter provided.

Section 4.    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

Section 5.    UNION TRUSTEES. The Union shall be and is empowered to appoint all Union Trustees.

Section 6.    EMPLOYER TRUSTEES. The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

Section 7.    REMOVAL OF TRUSTEES. The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

Section 8.    WHO MAY BE TRUSTEES. At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees. Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 9.    FORM OF NOTIFICATION. In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

- 7 -

the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association. Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

Section 10.    VESTING OF POWERS AND DUTIES. Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV

## CANADIAN TRUSTEES

Section 1.    DECISIONS. The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

Section 2.    APPOINTMENT. The Canadian Board of Trustees shall consist of up to 6 Trustees. The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens. Canadian Employers may appoint 2 Trustees who shall be Canadian citizens. Employer Trustees of this Fund may appoint 1 Trustee.

Section 3.    REMOVAL. The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

36479-3

*Section 4.*    WHO MAY BE TRUSTEES.  Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located.  Each Employer Trustee must also employ an average of twenty-five or more employees  Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*    PROCEDURES.  The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

36479-3

# ARTICLE V

## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*    PROPERTY AND ASSISTANCE.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*    CONSTRUCTION OF AGREEMENT.  The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*    GENERAL POWERS.  The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*    COMPENSATION. The Union and Employer Trustees shall not receive compensation for the performance of their duties. However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*    PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.*    BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

- 13 -

36479-3

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund

    *Section 8*       EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

    *Section 9.*       DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

    The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

    The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

    *Section 10.*    SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*    RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*    EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*    MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

- 15 -

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS.    The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS.    The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS. The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

# ARTICLE VII

## PLAN OF BENEFITS

*Section 1.*    BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*    RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*    ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*    METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*    WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

36479-3

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

*Section 6.*    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

*Section 7.*    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

*Section 1.*    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

*Section 2.*    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

36479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING.  Action by the Trustees may also be taken by them in writing without a meeting; provided, however, that in such cases there shall be unanimous written concurrence by all the Trustees

Section 4.    QUORUM (UNITED STATES).  In all meetings of the Trustees, two Trustees shall constitute a quorum for the transaction of business providing that there is at least one Employer and one Union Trustee present at the meeting.  The vote of any absent Trustee shall be cast by the Trustees present, designated by the same party with the same force as if such absent Trustee was present.  If at any time there is an unequal number of Employer and Union Trustees appointed, the Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES).  All action by the Trustees shall be by majority decision of the Employer and Union Trustees.  Such majority vote shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees.  In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA).  In all meetings of the Canadian

- 19 -

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

*Section 7.*    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

# ARTICLE IX

## IMPARTIAL ARBITRATOR

*Section 1.*    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

*Section 2.*    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

# ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS.  This Agreement and Declaration of Trust may be executed in any number of counterparts.  The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT.  An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE.  The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002.  This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

# ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES.  This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees.  As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof.  Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

36479-3

*Section 2.*    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

# ARTICLE XII

## TERMINATION OF TRUST

*Section 1.*    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

*Section 2.*    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

*Section 3.*    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

*Section 4.*    NOTIFICATION OF TERMINATION. Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

*Section 1.*    NON-REVERSION. Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

*Section 2.*    TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

*Section 3.*    VESTED RIGHTS. No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.    ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.    SITUS. The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.    CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.    CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

16479-3

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

*Section 8.*      NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

*Section 9.*      SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

*Section 10.*     TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
          James A. Williams
          General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
          John Frye
          Chairman

- 25 -

36479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Robert Kucheran
William Nicholls

Adolf Gust
Richard Pazdzierski

International Painters And Allied Trades
Industry Pension Plan



Rules and Regulations
as amended and restated as of January 1, 2003



# IUPAT INDUSTRY PENSION PLAN

PAGE i

## TABLE OF CONTENTS

ARTICLE 1.     ESTABLISHMENT & CONSTRUCTION ........................................................... 1

| | | |
|---|---|---|
| Section 1.01 | Establishment of Plan and Name | 1 |
| Section 1.02 | Purpose | 1 |
| Section 1.03 | Trustees | 1 |
| Section 1.04 | Plan Effective Date | 1 |
| Section 1.05 | Amendment of Plan | 2 |
| Section 1.06 | Prohibited Amendments | 2 |
| Section 1.07 | Merger or Transfer of Plan Assets | 2 |
| Section 1.08 | Termination of Plan | 2 |
| Section 1.09 | Termination Actions | 3 |
| Section 1.10 | Notices | 3 |
| Section 1.11 | Unauthorized Representations | 3 |
| Section 1.12 | Construction | 3 |
| Section 1.13 | Choice of Law | 4 |
| Section 1.14 | Severability | 4 |

ARTICLE 2.     ADMINISTRATION ........................................................... 4

| | | |
|---|---|---|
| Section 2.01 | Powers Of Trustees | 4 |
| Section 2.02 | Duties and Powers of Plan Administrator | 5 |
| Section 2.03 | Discretion | 5 |
| Section 2.04 | Consultants | 5 |
| Section 2.05 | Delegation and Allocation of Responsibility | 5 |
| Section 2.06 | Reliance | 5 |
| Section 2.07 | Limitation of Liability | 5 |
| Section 2.08 | Indemnity | 6 |

ARTICLE 3.     PARTICIPATION ........................................................... 6

| | | |
|---|---|---|
| Section 3.01 | Eligible Employees | 6 |
| Section 3.02 | Entry Date | 7 |
| Section 3.03 | Termination of Participation | 7 |
| Section 3.04 | Reinstatement of Participation | 7 |
| Section 3.05 | Acceptance of a New Contributing Employer | 8 |
| Section 3.06 | Acceptance of A New Affiliated Employer | 8 |
| Section 3.07 | Additional Conditions | 9 |
| Section 3.08 | Delinquent Employers | 9 |
| Section 3.09 | Mergers | 10 |

ARTICLE 4.     VESTING ........................................................... 10

| | | |
|---|---|---|
| Section 4.01 | Vested Participant | 10 |
| Section 4.02 | Service Vesting | 10 |
| Section 4.03 | Age Vesting | 11 |
| Section 4.04 | Termination Vesting | 11 |
| Section 4.05 | Vesting Changes | 11 |
| Section 4.06 | Years of Vesting Service | 11 |
| Section 4.07 | One-Year Break-in-Service | 12 |
| Section 4.08 | Effect of One-Year Break | 12 |
| Section 4.09 | Cure of One-Year Break | 12 |
| Section 4.10 | Family and Medical Leave | 13 |
| Section 4.11 | Qualified Military Service | 13 |
| Section 4.12 | Permanent Break in Service | 14 |

# IUPAT INDUSTRY PENSION PLAN                    PAGE ii

Section 4.13    Effect of Permanent Break ......................................................................... 14

ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION ................................... 15

Section 5.01    Accrued Benefit ..................................................................................... 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification ...... 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount ..... 17
Section 5.05    Benefit Credit for Service during the Contribution Period ........................... 19
Section 5.06    Maximum Contribution Rates ................................................................... 19
Section 5.07    Extra Contributions ................................................................................ 20
Section 5.08    Contribution Rate .................................................................................. 20
Section 5.09    Contribution Rate Changes ..................................................................... 20
Section 5.10    Benefit Break-In-Continuity .................................................................... 21
Section 5.11    New Groups .......................................................................................... 22
Section 5.12    Reciprocal Pension Agreements ............................................................. 22
Section 5.13    Merger Agreements ............................................................................... 23
Section 5.14    Post-Retirement Benefit Increases .......................................................... 23

ARTICLE 6.    PENSION BENEFIT PAYMENT ........................................................... 24

Section 6.01    Normal Retirement Pension – Eligibility ................................................... 24
Section 6.02    Normal Retirement Age .......................................................................... 24
Section 6.03    Normal Retirement Pension – Amount ...................................................... 24
Section 6.04    Late Retirement Pension - Eligibility ....................................................... 25
Section 6.05    Late Retirement Pension – Amount .......................................................... 25
Section 6.06    Mandatory Payment of Benefits .............................................................. 25
Section 6.07    Mandatory Payment - Amount ................................................................ 26
Section 6.08    Special Early Retirement Pension - Eligibility ........................................... 27
Section 6.09    Special Early Retirement Pension - Amount .............................................. 28
Section 6.10    Early Retirement Pension —Eligibility ...................................................... 28
Section 6.11    Early Retirement Pension – Amount ......................................................... 28
Section 6.12    Disability Pension — Eligibility ................................................................ 29
Section 6.13    Disability Pension - Amount .................................................................... 30
Section 6.14    Effect of Recovery by a Disabled Pensioner .............................................. 30
Section 6.15    Early Vested Pension — Eligibility ............................................................ 31
Section 6.16    Early Vested Pension - Amount ............................................................... 31
Section 6.17    Partial Pension - Eligibility ..................................................................... 32
Section 6.18    Partial Pension - Amount ........................................................................ 32
Section 6.19    Partial Pension – Payment Forms ............................................................ 32
Section 6.20    Non-Duplication of Pensions ................................................................... 32
Section 6.21    Taxes .................................................................................................. 33

ARTICLE 7.    STANDARD PENSION PAYMENT FORMS ............................................ 33

Section 7.01    General Payment Restrictions ................................................................. 33
Section 7.02    Commencement of Benefits Generally ...................................................... 33
Section 7.03    Married Participants - General Rules ........................................................ 34
Section 7.04    Single Participants - General Rules .......................................................... 34
Section 7.05    Small Benefits ...................................................................................... 34
Section 7.06    Husband-and-Wife Pension at Retirement - - Standard Form of Benefit Payment
                for Married Participants ......................................................................... 35
Section 7.07    Waiver of Husband-and-Wife Pension ...................................................... 35
Section 7.08    Pre-retirement Surviving Spouse Pension .................................................. 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension ................................... 37
Section 7.10    Pre-retirement Surviving Spouse Pension – Spouse Alternatives .................. 38
Section 7.11    Qualified Domestic Relations Orders ........................................................ 39

# IUPAT INDUSTRY PENSION PLAN                                    PAGE iii

Section 7.12    Qualified Domestic Relations Order Procedures .................................................. 39
Section 7.13    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
                Payment for Unmarried Participants .................................................................. 40
Section 7.14    Pre-Retirement Death Benefit - Eligibility ......................................................... 40
Section 7.15    Post-Retirement Death Benefit – Amount ........................................................... 41
Section 7.16    Beneficiary ........................................................................................................ 41
Section 7.17    Retirement and Suspension of Benefits Before Normal Retirement Age ............ 42
Section 7.18    Pensioner Reporting of Work Before Normal Retirement Age ........................... 42
Section 7.19    Resumed Benefits Before Normal Retirement Age – Eligibility ......................... 43
Section 7.20    Resumed Benefits Before Normal Retirement Age - Amount ............................. 43
Section 7.21    Suspension of Benefits after Normal Retirement Age ........................................ 44
Section 7.22    Plan Disclosure of Suspension Rules ................................................................ 45
Section 7.23    Pensioner Reporting of Work after Normal Retirement Age .............................. 45
Section 7.24    Advance Determinations of Suspendible Work .................................................. 46
Section 7.25    Plan Notice of Suspension after Normal Retirement Age .................................. 46
Section 7.26    Resumption of Benefit Payments after Normal Retirement Age - Eligibility ..... 46
Section 7.27    Resumption of Benefit Payments after Normal Retirement Age – Amount ......... 47
Section 7.28    Waiver of Suspension ........................................................................................ 48
Section 7.29    Incompetence or Incapacity of a Pensioner or Beneficiary ............................... 48
Section 7.30    Non-Assignment of Benefits ............................................................................. 48
Section 7.31    Payments to Minors .......................................................................................... 49

ARTICLE 8.     OPTIONAL FORMS OF PENSION PAYMENT ................................................... 49

Section 8.01    General ............................................................................................................... 49
Section 8.02    Joint and Survivor Options ............................................................................... 50
Section 8.03    Social Security (Level Income) Option .............................................................. 52
Section 8.04    Combined Level Income and Joint and Survivor Option .................................... 52
Section 8.05    Ten Year Certain Option ................................................................................... 53
Section 8.06    Lump Sum Payment Option ............................................................................... 53
Section 8.07    Benefit Payment Restrictions ............................................................................ 54
Section 8.08    Trustee-to-Trustee Transfers - Rollovers ......................................................... 58

ARTICLE 9.     CLAIMS PROCEDURE & BENEFIT PAYMENTS .......................................... 60

Section 9.01    Application ......................................................................................................... 60
Section 9.02    Partial Pension - Application Procedure ........................................................... 60
Section 9.03    Information and Proof ........................................................................................ 60
Section 9.04    Trustee Discretion and Authority ...................................................................... 60
Section 9.05    Initial Claim Determination ............................................................................... 61
Section 9.06    Request for Review ........................................................................................... 61
Section 9.07    Decision on Review ........................................................................................... 61
Section 9.08    Administrative Delay ......................................................................................... 62
Section 9.09    No Rights to Assets ........................................................................................... 62

ARTICLE 10.    FUNDING ............................................................................................................ 62

Section 10.01   Funding Policy ................................................................................................... 62
Section 10.02   Trust for Participants ........................................................................................ 62
Section 10.03   Investments ........................................................................................................ 62
Section 10.04   Source of Benefit Payments .............................................................................. 63
Section 10.05   Expenses ............................................................................................................ 63
Section 10.06   Non-Reversion .................................................................................................. 63
Section 10.07   Employer Contributions .................................................................................... 63
Section 10.08   Irrevocability of Contributions .......................................................................... 63
Section 10.09   Qualified Military Service Contributions ......................................................... 63

# IUPAT INDUSTRY PENSION PLAN                                    PAGE iv

Section 10.10  Return of Mistaken Contributions ............................................................... 64
Section 10.11  Delinquent Employers ............................................................................... 64
Section 10.12  Collection of Delinquent Contributions ....................................................... 65

ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL ........................................... 66

Section 11.01  Employer Withdrawal - In General ............................................................. 66
Section 11.02  Control Group Employer - Definition ......................................................... 66
Section 11.03  Construction Industry Employers - Definition ........................................... 66
Section 11.04  Complete Withdrawal - Defined ................................................................. 66
Section 11.05  Partial Withdrawal - Defined ..................................................................... 67
Section 11.06  Unfunded Vested Liability ......................................................................... 67
Section 11.07  Title IV Vested Benefits ............................................................................. 67
Section 11.08  Initial Unfunded Vested Liability ............................................................... 68
Section 11.09  Annual Change in Unfunded Vested Liability ............................................. 68
Section 11.10  Reallocated Liability .................................................................................. 68
Section 11.11  Mergers ..................................................................................................... 69
Section 11.12  Amount of Control Group Employer Liability for Complete Withdrawal ..... 69
Section 11.13  Employer Proportionate Share of Initial Unfunded Vested Liability ........... 70
Section 11.14  Employer Proportionate Share of Annual Changes in Unfunded Vested Liability ... 70
Section 11.15  Apportionment Base Period ...................................................................... 71
Section 11.16  Base Period Employer Contributions .......................................................... 71
Section 11.17  Pre-1980 Terminated Unit Contributions .................................................. 72
Section 11.18  Employer Proportionate Share of Annual Changes for Reallocated Liability ... 72
Section 11.19  Transfers of Liability ................................................................................. 72
Section 11.20  De Minimis Reduction ............................................................................... 73
Section 11.21  20-Year Payment Limitation ...................................................................... 73
Section 11.22  Insolvency Reduction ................................................................................ 73
Section 11.23  Partial Withdrawal Liability - Amount ....................................................... 73
Section 11.24  Payment of Withdrawal Liability ............................................................... 73
Section 11.25  Notice and Collection of Withdrawal Liability ........................................... 74
Section 11.26  Withdrawal Liability Review ...................................................................... 74
Section 11.27  Withdrawal Liability Arbitration ................................................................ 75
Section 11.28  Withdrawal Liability Default ...................................................................... 75
Section 11.29  Withdrawal Liability Collection Litigation .................................................. 75
Section 11.30  Withdrawal Liability Abatement – Construction Industry Employers ......... 76
Section 11.31  Withdrawal Liability Abatement – Other Employers ................................... 76
Section 11.32  Mass Withdrawal ...................................................................................... 76

ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS ............................................ 76

Section 12.01  Non-Discrimination ................................................................................... 76
Section 12.02  Affiliated Employer Participation ............................................................... 77
Section 12.03  Conditional Adoption ................................................................................ 77
Section 12.04  General Affiliated Employer Rules ............................................................. 77
Section 12.05  Limitation Employer .................................................................................. 78
Section 12.06  Top-Heavy Requirements ........................................................................... 78
Section 12.07  Maximum Benefit Limit ............................................................................. 80
Section 12.08  Defined Benefit Plan Limit ......................................................................... 80
Section 12.09  Section 415 Aggregation ........................................................................... 82
Section 12.10  Maximum Benefits Coordination ............................................................... 82
Section 12.11  Restricted (High-25) Employees ................................................................. 82

ARTICLE 13.    DEFINITIONS ......................................................................................... 83

## IUPAT INDUSTRY PENSION PLAN _____ PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

### Section 10.04  Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan. This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05  Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10.06  Non-Reversion.

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07  Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08  Irrevocability of Contributions

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09  Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

     (1)    the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

     (2)    average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c)  Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

     (1)    Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

     (2)    Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a)  The Trustees may return amounts erroneously paid to the Trust as allowed by law

(b)  A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees

(c)  A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d)  A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a)  The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer

(b)  To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

AMENDMENT TO THE
INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
(as restated effective January 1, 1999)

Major Topic:                  Title to Plan Assets

General Effective Date:       January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.    Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

122882-1

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 14_, 2003

122882-1